Erik A. Christiansen, USB #7372
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
EChristiansen@parsonsbehle.com
ecf@parsonsbehle.com
*Attorneys for Plaintiff ACE AMERICAN INSURANCE COMPANY*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENNTRAL DIVISION

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. MAGNESIUM, LLC,<br><br>Defendant. | **COMPLAINT FOR DECLARATORY RELIEF**<br><br>Case No.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ACE American Insurance Company ("ACE"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendant US Magnesium, LLC ("US Magnesium"), states as follows:

### NATURE OF THE ACTION

1. ACE and US Magnesium have a dispute concerning the existence and amount of coverage available under two commercial property insurance policies that ACE issued to US Magnesium at its headquarters in Salt Lake City, Utah. The dispute centers on claimed losses to pieces of equipment at US Magnesium's manufacturing facility located in Rowley, Utah. ACE (through its claim handlers, adjuster, and consultants) investigated these losses through site visits

in Utah and requests for information sent to Utah. ACE ultimately paid more than $3.9 million in covered losses to US Magnesium, with the payment directed to the company's Salt Lake City headquarters.

2. US Magnesium is not satisfied with the results of ACE's investigation. But rather than filing suit in the state where it is headquartered and where the losses occurred, US Magnesium has raced to state court in Philadelphia, Pennsylvania. The only fact that US Magnesium uses to justify its blatant forum-shopping is that ACE is domiciled there. But not a single event—not even the issuance of the insurance policies—took place in Philadelphia. No witnesses or evidence are located in Philadelphia. In short, Philadelphia is a patently inconvenient forum for the parties to adjudicate their dispute.

3. ACE has filed this action to ensure that the legitimate dispute between the parties is heard in the only jurisdiction with an interest in its resolution—Utah.

**PARTIES**

4. ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania.

5. US Magnesium is a limited liability company organized under Delaware law with its principal place of business in Salt Lake City, Utah, and a manufacturing facility located in Rowley, Utah.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201(a) and 28 U.S.C. § 1332(a)(1). Upon information and belief, no member of US Magnesium is a citizen of Pennsylvania, and therefore the parties are citizens of different states.

In addition, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. This Court has general personal jurisdiction over US Magnesium because it is domiciled in this State. This Court also has specific personal jurisdiction over US Magnesium pursuant to Utah Code § 78B-3-205(1) and (4).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because US Magnesium resides in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because, among other things, the policies were issued to US Magnesium in this district, the losses occurred in this district, and other events giving rise to this action took place in this district.

## FACTUAL BACKGROUND

### A. ACE's California Office Issues the Policies to US Magnesium in Utah

9. This action concerns two commercial property policies that ACE issued to US Magnesium. The first covers the period from August 31, 2020 to August 31, 2021 (the "2020-2021 Policy"). The second covers the period from August 31, 2021 to October 1, 2022 (the "2021-2022 Policy"). True and correct copies of the 2020-2021 Policy and 2021-2022 Policy are attached hereto as **Exhibits A** and **B**, respectively.

10. As relevant to this action, the terms of the 2020-2021 and 2021-2021 Policies (together, the "Policies") are materially identical.

11. The Policies were issued from Los Angeles, California, as they were signed by an ACE representative located in Los Angeles, California. The Policies list the "service office" as

3

Los Angeles, California. *See* 2020-2021 Policy, Declarations at 1; 2021-2022 Policy, Declarations at 1.

12. The Policies were issued to US Magnesium's headquarters in Salt Lake City, Utah. *See* 2020-2021 Policy, Declarations at 1; 2021-2022 Policy, Declarations at 1.

**B. The Policies' Terms**

13. The Policies cover both property damage and business interruption. Specifically, the Policies provide coverage, subject to their terms and conditions, for "the property insured hereunder against all risks of direct physical loss or damage occurring during the period of this Policy from any external cause, except as hereinafter excluded or limited." 2020-2021 Policy, General Conditions at 1; 2021-2022 Policy, General Conditions at 1. The Policies also cover, subject to their terms and conditions, "against loss directly resulting from necessary interruption of business caused by destruction of or damage to real or personal property covered herein, except finished stock, and arising from a peril covered hereunder and occurring during the term of this Policy; all while located at locations per schedule attached." 2020-2021 Policy, Business Interruption Section at 1; 2021-2022 Policy, Business Interruption Section at 1.

14. This coverage extends up to limits of $60 million per occurrence, subject to multiple sub-limits and deductibles that can apply based on the nature of the claim. *See* 2020-2021 Policy, Supplemental Declarations; 2021-2022 Policy, Supplemental Declarations.

15. The Policies contain a general $1 million deductible that applies to both property damage and business interruption. *See* 2020-2021 Policy, Supplemental Declarations at 2; 2021-2022 Policy, Supplemental Declarations at 2. With respect to claims related to gas

turbine/generator sets, the Policies contain a deductible for property damage of $2 million and a deductible for business income loss of 2,880 hours (which translates to 120 days). *See id.*

16. A key issue in dispute between the parties is whether all damage claimed by US Magnesium arose out of the same Accident or Occurrence.

17. The Policies define "Occurrence" to mean, as relevant to this action: "any one loss, disaster or casualty, or series of losses, disasters or casualties arising out of one event." 2020-2021 Policy, Endorsement No. 34, ¶ B.1.; 2021-2022 Policy, Endorsement No. 34, ¶ B.1.

18. Relatedly, the Policies' Boiler and Machinery Endorsements define the term "Accident" to mean "a sudden and accidental breakdown of an Object or a part thereof which manifests itself at the time of its occurrence by physical damage that necessitates repair or replacement of the Object of part thereof." 2020-2021 Policy, Endorsement No. 9, ¶ 1; 2021-2022 Policy, Endorsement No. 9, ¶ 1. These Endorsements further state that "[i]f an initial Accident causes other Accidents, all will be considered 'One Accident'. All Accidents at any one location which manifest themselves at the same time and are the result of the same cause will be considered 'One Accident.'" 2020-2021 Policy, Endorsement No. 9, ¶ 2; 2021-2022 Policy, Endorsement No. 9, ¶ 2.

19. With respect to deductibles, the Policies provide that, "[a]s respects real and personal property, all claims for loss, damage or expense arising out of any one occurrence … shall be adjusted as one claim and from the amount of each such adjusted claim there shall be deducted the sum stated on the Declarations Page." 2020-2021 Policy, General Conditions at 1; 2021-2022 Policy, General Conditions at 1.

5

20. Together, these provisions mean that if a series of losses arise out of the same Accident or Occurrence, they will be subject to a single limit and, importantly, a single deductible. But if losses arise out of separate Accidents or Occurrences, they will be subject to multiple limits and multiple deductibles—one for each Accident or Occurrence.

21. The Policies also contain exclusions that can eliminate coverage. One of these exclusions states that the Policies do "not insure against loss, damage or expense caused by or resulting from":

> Gradual deterioration, depletion, inherent vice, latent defect, termites, moth, vermin, wear and tear, dampness or dryness of atmosphere, extremes or changes of temperature, smog, shrinkage, evaporation, loss of weight, rust, corrosion, erosion, wet or dry rot, change in flavor or color or texture or finish, unless such loss is caused directly by physical damage not otherwise excluded in this Policy to the property covered….

2020-2021 Policy, General Conditions at 4, ¶ f; 2021-2022 Policy, General Conditions at 4, ¶ f.

22. Another exclusion provides that the Policies do "not insure against loss, damage or expense caused by or resulting from" "[e]lectrical failure, electrical injury or disturbance to electrical appliances, devices, fixtures, or wiring caused by electrical currents artificially generated, unless fire or explosion ensues and then only for the actual loss or damage directly caused by such ensuing fire or explosion…." 2020-2021 Policy, General Conditions at 4, ¶ d; 2021-2022 Policy, General Conditions at 4, ¶ d.

23. In addition, the Boiler and Machinery Endorsement to the Policies states that the following "losses [] not insured under this Endorsement" include "[b]reakdown of any boiler setting, insulating or refractory material not caused by an Accident to the Object…." 2020-2021

6

Policy, Boiler and Machinery Endorsement at 2, ¶ 5.A.2; 2021-2022 Policy, Boiler and Machinery Endorsement at 2, ¶ 5.A.2.

24. The Policies also impose certain conditions on US Magnesium in the event of a loss. As relevant here, the Policies require US Magnesium to report "[e]very loss … in writing as soon as practicable with full particulars to the Company through <u>Starr Technical Risks Agency, Inc.</u>" 2020-2021 Policy, General Conditions at 6; 2021-2022 Policy, General Conditions at 6. US Magnesium is also required to "give immediate written notice to this Company through <u>Starr Technical Risks Agency, Inc.</u> of any Business Interruption loss…." 2020-2021 Policy, General Conditions at 7; 2021-2022 Policy, General Conditions at 7.

25. US Magnesium is also required to cooperate with any investigation of a claimed loss. The Policies specify that:

> The Insured shall furnish a copy of all the descriptions and schedules in all policies and if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and shall submit and insofar as is within its power, cause its employees and others to submit to examinations under oath by any person named by this Company and subscribed to the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

2020-2021 Policy, General Conditions at 7; 2021-2022 Policy, General Conditions at 7.

### C. ACE Pays for the 2021 Turbine Losses at US Magnesium's Facility in Rowley, Utah

26. US Magnesium, which is headquartered in Salt Lake City, Utah, owns and operates a magnesium production facility in Rowley, Utah (the "Facility").

27. The magnesium production process involves isolating magnesium chloride salts from the Great Salt Lake and then extracting the magnesium by electrolysis. One of the steps in the process involves the drying of magnesium chloride through a combination of gas turbines and spray driers. The Facility has three gas turbines that generate heated and pressurized air, which both dries the magnesium chloride and pneumatically moves the air to a later stage in the production process.

28. On March 23, 2021, one of the gas turbine engines at the Facility allegedly experienced compressor damage and was taken offline. This turbine went back into service on December 4, 2021.

29. On June 24, 2021, another turbine allegedly experienced an electrical trip. This turbine remained partially in service, with the gas turbine section providing exhaust gases for the drying of magnesium chloride and partial air for transporting the magnesium chloride powder.

30. US Magnesium waited until November 16, 2021 to notify ACE of the March 23 and June 24, 2021 incidents.

31. ACE handled the claim through Starr Technical Risks Agency, Inc. ("Starr"), and specifically, Starr employees located outside of Pennsylvania. Starr retained Christopher Nimr ("Nimr"), who was based out of Walnut Creek, California, to adjust the loss. Nimr coordinated the retention of consultants to assist in the investigation of the loss.

32. On February 1, 2022, Nimr and a consultant met with US Magnesium personnel at the Facility.

33. Both before and after this visit, requests for information were sent to US Magnesium's headquarters in Salt Lake City, Utah.

34. US Magnesium reported that the repair of physical damage to the two turbines would not exceed the $2 million deductible applicable to claims related to gas turbines. But US Magnesium believed it had suffered covered business interruption loss that exceeded the value of the 120-day deductible applicable to gas turbine losses.

35. After investigation, it was determined that US Magnesium experienced $3,936,167 in covered business interruption losses as a result of the June 24, 2021 turbine outage. In or about June 2023, ACE paid this sum to US Magnesium pursuant to the terms of the 2020-2021 Policy. This payment was directed to US Magnesium's headquarters in Salt Lake City, Utah.

36. This payment fully compensates US Magnesium for covered losses directly connected to the June 24, 2021 turbine outage.

**D. The Unrelated Alleged Drier Collapse and Electrode Degradation**

37. In January or February 2022, two driers at the Facility allegedly sustained collapses of their diffuser trays, requiring temporary repairs. Those repairs allegedly cost roughly $500,000.

38. Later still, US Magnesium claimed that 47 separate electrolytic cells needed to be replaced. These types of cells degrade as part of their normal function, and replacing cells is part of the ordinary operating expense of facilities that use electrolytic cells.

39. US Magnesium claimed that the total replacement cost for these cells was valued in the millions of dollars. Importantly, however, the replacement cost for each individual cell did not exceed the $1 million deductible that would apply to a claim based on alleged cell failure.

40. On September 19, 2022, US Magnesium's insurance broker advised that the Facility needed to be shut down due to "drier problems." US Magnesium claimed that these issues all related back to the turbine losses in 2021.

41. By claiming that the alleged drier and electrolytic cell failures constituted part of the same Accident or Occurrence as the 2021 turbine losses, US Magnesium would be able to avoid the issue that none of the individual alleged losses was valued above the applicable $1 million deductible.

42. On December 1, 2022, Nimr and a consultant met again with US Magnesium personnel at the Facility.

43. Additional requests for information were also sent to US Magnesium's office in Salt Lake City, Utah.

44. ACE, through Starr and its adjuster and consultants, investigated these claims and determined that the alleged drier collapses and electrolytic cell replacements were not connected to the 2021 turbine losses.

45. Because these alleged losses were not connected, each of them would need to satisfy a $1 million deductible.

46. In addition, the alleged drier and electrolytic cells failures may be caused by excluded gradual deterioration, corrosion, depletion, inherent vice, or wear and tear.

47. Moreover, because the electrolytic cells need to be replaced as part of their normal operation, alleged failures of those cells may not constitute fortuitous losses that come within the scope of coverage provided by the Policies.

**E. This Dispute Should Be Decided in Utah**

48. In early 2025, the parties were coordinating a principals' meeting at US Magnesium's headquarters in Salt Lake City, Utah. In February 2025, Starr provided dates of availability for a meeting. US Magnesium failed to respond.

49. Instead, on April 9, 2025, US Magnesium filed suit against ACE for alleged breaches of the 2020-2021 Policy in the Court of Common Pleas in Philadelphia, Pennsylvania. A true and correct copy of the Complaint filed in that action is attached hereto as **Exhibit C**.

50. The only basis US Magnesium identified for filing suit in Philadelphia is that ACE's principal place of business is located there. US Magnesium does not identify a single act or omission relevant to the dispute that occurred in Philadelphia, nor does it identify a single relevant witness or piece of evidence located in Philadelphia.

51. In fact, this dispute should be decided in Utah, where US Magnesium is based and where the Facility is located.

52. All US Magnesium evidence and witnesses are located in Utah. None are located in Pennsylvania.

53. All site visits occurred in Utah. None occurred in Pennsylvania.

54. Any future site visits by experts or fact-finders will occur in Utah, not Pennsylvania.

55. The people who adjusted and handled this claim are based outside of Pennsylvania.

56. No ACE evidence or witnesses are located in Pennsylvania.

57. Furthermore, this action, unlike the Pennsylvania action, addresses both the 2020-2021 Policy and 2021-2022 Policy. As such, this action, as opposed to the Pennsylvania action, will provide a complete resolution of all issues in dispute between the parties.

58. Upon information and belief, US Magnesium filed suit in Philadelphia solely to gain a tactical advantage in its dispute with ACE by forum-shopping for what it views to be a more favorable forum than Utah.

59. The Policy has nothing to do with Pennsylvania. It was issued out of California to US Magnesium's headquarters in Salt Lake City, Utah.

60. The 2020-2021 Policy covers six specified properties located in Utah, Alabama, Illinois, Iowa, and Ohio. *See* 2020-2021 Policy, Schedule of Locations. The 2021-2022 Policy covers eight specified properties located in Utah, Alabama, Illinois, Iowa, and Ohio. *See* 2021-2022 Policy, Schedule of Locations. Neither of the Policies covers any property located in Pennsylvania.

61. Utah law governs the interpretation and application of the Policies in this dispute.

## CAUSES OF ACTION

### Count I
### Declaratory Judgment – No Breach of The 2020-2021 Policy

62. ACE repeats and realleges the allegations of all prior paragraphs as if fully set forth herein.

63. The Policy is a valid contract between ACE and US Magnesium.

64. A real and justiciable dispute between the parties exists with respect to the existence and value of coverage under the 2020-2021 Policy for the 2021 turbine outages and the 2022 alleged drier and electrolytic cell failures.

65. ACE has not breached the 2020-2021 Policy because, among other things:

   a. ACE has fully paid the covered value of US Magnesium's claim;

   b. The remaining value of US Magnesium's claim, if any, does not exceed the applicable deductibles;

   c. To the extent US Magnesium seeks additional property damage coverage for the June 24, 2021 turbine failure, such a request is barred by the 2020-2021 Policy's exclusion for electrical failure;

   d. The alleged 2022 drier failures do not arise out of the same accident, occurrence, or event as the 2021 turbine failures;

   e. The alleged 2022 electrolytic cell failures do not arise out of the same accident, occurrence, or event as the 2021 turbine failures;

   f. Coverage for the alleged 2022 drier failures is barred by the 2020-2021 Policy's exclusion for deterioration, corrosion, and wear and tear;

   g. Coverage for the alleged 2022 drier failures is also barred by the exclusion in the 2020-2021 Policy's Boiler and Machinery Endorsement applicable to "[b]reakdown of any boiler setting, insulating or refractory material not caused by an Accident to the Object….";

   h. Coverage for the alleged 2022 electrolytic cell failures does not exist because such alleged failures do not constitute fortuitous losses;

   i. Coverage for the alleged 2022 electrolytic cell failures is barred by the 2020-2021 Policy's exclusion for deterioration, corrosion, and wear and tear;

    j.     US Magnesium failed to cooperate in ACE's investigation;

    k.     US Magnesium failed to file sworn proofs of loss within 60 days of the claimed losses;

    l.     US Magnesium caused or contributed to its own losses through the way it operated the Facility; and

    m.    US Magnesium breached the 2020-2021 Policy's condition to give timely notice of the claimed property damage and business interruption losses.

66.    For these reasons, ACE is entitled to a declaration that it has not breached the 2020-2021 Policy.

## Count II
### Declaratory Judgment – No Breach of The 2021-2022 Policy

67.    ACE repeats and realleges the allegations of all prior paragraphs as if fully set forth herein.

68.    The Policy is a valid contract between ACE and US Magnesium.

69.    A real and justiciable dispute between the parties exists with respect to the existence and value of coverage under the 2021-2022 Policy for the 2022 alleged drier and electrolytic cell failures.

70.    ACE has not breached the 2021-2022 Policy because, among other things:

    a.     The value of US Magnesium's claim, if any, does not exceed the applicable deductibles;

    b.    Coverage for the alleged 2022 drier failures is barred by the 2021-2022 Policy's exclusion for deterioration, corrosion, and wear and tear;

      c.      Coverage for the alleged 2022 drier failures is also barred by the exclusion in the 2021-2022 Policy's Boiler and Machinery Endorsement applicable to "[b]reakdown of any boiler setting, insulating or refractory material not caused by an Accident to the Object….";

      d.      Coverage for the alleged 2022 electrolytic cell failures does not exist because such alleged failures do not constitute fortuitous losses;

      e.      Coverage for the alleged 2022 electrolytic cell failures is barred by the 2021-2022 Policy's exclusion for deterioration, corrosion, and wear and tear;

      f.      US Magnesium failed to cooperate in ACE's investigation;

      g.      US Magnesium failed to file sworn proofs of loss within 60 days of the claimed losses;

      h.      US Magnesium caused or contributed to its own losses through the way it operated the Facility; and

      i.      US Magnesium breached the 2021-2022 Policy's condition to give timely notice of the claimed property damage and business interruption losses.

71.      For these reasons, ACE is entitled to a declaration that it has not breached the 2021-2022 Policy.

## PRAYER FOR RELIEF

WHEREFORE, ACE respectfully requests that the Court enter judgment against US Magnesium and in favor of ACE as follows:

      a.      Declaring that ACE has not breached the 2020-2021 Policy;

b.	Declaring that ACE has not breached the 2021-2022 Policy; and

c.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

ACE demands a trial by jury for all issues so triable.

DATED May 9, 2025.

/s/ *Erik A. Christiansen*
Erik A. Christiansen
PARSONS BEHLE & LATIMER

Attorneys for Plaintiff ACE AMERICAN INSURANCE COMPANY