Michael R. Johnson (7070)
Matthew M. Cannon (11265)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel:  (801) 532-1500
Fax:  (801) 532-7543
mjohnson@rqn.com
mcannon@rqn.com

Jason A. Snyderman (*pro hac vice* pending)
John P. Wixted (*pro hac vice* pending)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Tel:  (215) 569-5774
Fax:  (215) 832-5774
Jason.Snyderman@BlankRome.com
John.Wixted@BlankRome.com

John A. Gibbons (*pro hac vice* pending)
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC 20006
Tel:  (202) 420-3644
Fax:  (202) 379-9118
John.Gibbons@BlankRome.com

Jason Frye (*pro hac vice* pending)
**BLANK ROME LLP**
444 West Lake St., Suite 1650
Chicago, IL 60606
Tel:  (312) 776-2600
Fax:  (312) 275-8146
Jason.Frye@BlankRome.com

*Attorneys for Defendant US Magnesium, LLC*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. MAGNESIUM, LLC,<br><br>Defendant. | **USM'S MOTION TO DISMISS OR STAY BASED ON THE ANTI-INJUNCTION ACT OR *WILTON/BRILLHART* ABSTENTION**<br><br>Case No. 2:25-cv-00371-JNP<br><br>Hon. Judge Jill N. Parrish |

Defendant US Magnesium, LLC ("USM"), by its attorneys, and pursuant Federal Rule of Civil Procedure 12(b)(1) and District of Utah Local Rule 7-1, moves this Court to dismiss this declaratory judgment action brought by ACE American Insurance Company ("ACE") pursuant to 28 U.S.C. § 2283 or, alternatively, to exercise its discretion to abstain from deciding this case

pursuant to *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), as reaffirmed by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994).

## I.    RELIEF SOUGHT AND GROUNDS FOR MOTION

This Court should dismiss or, alternatively, stay this action in favor of USM's first-filed, coercive Pennsylvania state court action (the "Pennsylvania Action"). This lawsuit reflects ACE's misguided effort to litigate the Pennsylvania Action in this forum, and ACE's gamesmanship is self-evident. USM initiated the Pennsylvania Action on April 9, 2025—*in ACE's own home forum*—after ACE breached its obligations under an All Risk Insurance Policy it issued to USM. ACE answered USM's state court complaint on May 9, 2025 and, on the same day, filed its complaint in this action seeking a declaration that it did not breach its obligations. ACE also alleges that it acted through Starr Technical Risks Agency, Inc. ("Starr") when it evaluated and adjusted USM's insurance claim. But tellingly, ACE did not include Starr as a co-plaintiff in this action because there is no diversity between Starr and USM. ACE also hastily retained counsel to represent it in this action that happens to be USM's long-time outside general counsel firm. Thus, while the Pennsylvania Action proceeds on the merits, this action will be mired in motion practice regarding Starr's status as an indispensable party and the conflict created by ACE's retention of USM's outside general counsel firm.

This Court should grant USM's Motion for two independent reasons. First, because the same parties are litigating the same issues in the pre-existing Pennsylvania Action, ACE's requested declaratory relief would violate the federal Anti-Injunction Act, 28 U.S.C. § 2283, which courts have extended to declaratory judgment actions in these circumstances. Under the Anti-Injunction Act, this Court lacks authority to entertain ACE's later-filed lawsuit. *See, e.g.*, *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("ordinarily a declaratory judgment will result in precisely the

same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid"); *Chandler v. O'Bryan*, 445 F.2d 1045, 1058 (10th Cir. 1971) ("where an injunction is improper under § 2283, declaratory relief should not be given").

Second, even if it had such authority, this Court can and should decline to exercise jurisdiction over this declaratory judgment action in favor of the Pennsylvania Action pursuant to the *Wilton/Brillhart* abstention doctrine[1] in light of the Tenth Circuit's *Mhoon* factors.[2] For either of these reasons, this Court should grant USM's Motion and dismiss or stay this action.

## II.     BACKGROUND

### A.     USM

USM, the last producer of primary magnesium in the United States, operated a 67,500 tons/year magnesium production plant located 60 miles west of Salt Lake City, Utah and had produced magnesium metal for approximately 50 years. USM Compl. ¶20.[3] The magnesium bars that USM produced are commonly used in aluminum and steel-based products, including aluminum beverage cans, military vehicles, and consumer electronics and are also used to produce other important metals such as titanium, uranium, and zirconium. *Id.* The creation of magnesium metal is a complex process that begins with the collection of water in the Great Salt Lake. *Id.* at ¶21. USM then creates magnesium bars through a production flow that includes several steps, including dehydration in large spray dryers that requires a well calibrated combination of heat and air production generated by up to three gas turbines. *Id.* at ¶21.

---

[1] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

[2] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994).

[3] USM's Complaint in the Pennsylvania Action (the "USM Compl.") is attached to ACE's Complaint ("Compl.") as Exhibit C. Dkt. 1-3

On March 23, 2021, a mechanical failure of one of the three gas turbine sets required in the spray drying circuit left only one operable turbine for heat production, conveying air production, and generator electrical output.  USM Compl. ¶22.  The sudden loss of the gas turbine put additional strain on the remaining equipment in the spray drying circuit, which precipitated additional equipment failures in the downstream production cycle.  *Id.*  On June 24, 2021, the last remaining turbine experienced numerous electrical failures in the generator, resulting in intermittent and prolonged outages and required repairs to the machinery.  *Id.* at ¶23.  While this occurred, heat production and conveying air production were limited.  *Id.*  This forced USM to use less efficient backup process burners for spray dryer heat input, and rental air compressors for conveying air production.  *Id.*  These units ultimately proved to be unreliable due to various issues with the diesel engines and compressor rotors.  *Id.*

The mechanical failure of the gas turbine in March 2021 kicked off a cascading series of events that lowered USM's magnesium production, while simultaneously overclocking supporting and downstream equipment to the point of failure. USM Compl. ¶27.  In September 2021, USM was forced to declare a force majeure event on magnesium and chemical production and has since ceased production of magnesium and chloride-based products.  *Id.*  Due to the mechanical failure, USM's magnesium production has been halted, and due to ACE's refusal to honor its insurance obligations, USM has not been able to recover nor restart its operations.  *Id.* at ¶28.

### B.    The All Risk Insurance Policy

ACE sold USM "All Risk" first party property insurance under an ACE USA Property insurance policy, Policy EPRN18229900, for the policy period August 31, 2020 to August 31, 2021 (the "All Risk Policy").  USM Compl. ¶11.  USM's magnesium production plant is an "Insured Location" under the All Risk Policy.  *Id.* at ¶13.  The All Risk Policy provides protection up to a $60 million limit of liability "for any one accident or disaster or any one series of accidents

or disasters arising out of any one occurrence." *Id.* at ¶14.  The All Risk Policy also contains a Boiler and Machinery Endorsement that provides coverage for any direct physical loss, business interruption loss, and extra expense resulting from a sudden and accidental breakdown of any mechanical or electrical machine or apparatus used for the generation, transmission, or utilization of mechanical or electrical power.  *Id.* at ¶16.  The Boiler and Machinery Endorsement provides that an initial Accident that causes other Accidents will be considered "One Accident" subject to a combined $60 million limit of liability for property damages, business interruption loss, and extra expense.  *Id.* at ¶17.  The All Risk Policy also states that "[a]djusters can only be assigned" by Starr.  Compl., Ex. A at p. 120 (Dkt. 1-1) (emphasis in original).

### C.    USM's Insurance Claim

The series of events described in Part II.A. caused USM to incur substantial costs in excess of the All Risk Policy's limits of liability to address the physical damage to the equipment, along with significant business interruption losses.  USM Compl. ¶28.  The All Risk Policy provides coverage for the initial mechanical failure of the turbine, the subsequent equipment failures, and the business interruption costs incurred due to this equipment failure because the March 2021 mechanical failure is an "Accident" to an "Object" as defined in the All Risk Policy.  *Id.* at ¶29.

In November 2021, USM notified ACE of the March and June 2021 turbine failures.  ACE responded on March 16, 2022 and made nearly twenty different requests for documents to fully evaluate USM's property damage and business interruption claim, which ultimately culminated into nearly sixty requests for information.  USM Compl. ¶31.  While USM complied with ACE's requests for information, subsequent damage to the spray dryer domes and cell population occurred after USM's initial claim submission.  *Id.* at ¶32.  On or around September 2022, USM's broker informed the claims adjuster of the subsequent equipment damage, that magnesium production had been suspended, and that recent damage was thought to be directly related to the previous

year's turbine/generator failure. *Id.* at ¶33. ACE responded by barraging USM with additional waves of document requests to determine whether there was a relation between the turbine failures and the subsequent property damage. USM fully complied with these requests. *Id.* at ¶34.

On or around July 2023, ACE agreed to a partial payment of nearly $4 million in undisputed business interruption loss related to the turbine failures. USM Compl. ¶35. On December 13, 2023, ACE's engineering consultant issued a report erroneously concluding that there was no definitive connection between the turbine failures and the failures of the dryers and cells. *Id.* at ¶36. USM responded with annotations to this report and additional documentation supporting the clear connection between the turbine failures and subsequent equipment damage. *Id.* at ¶37. ACE, however, refused to acknowledge that the subsequent equipment damage was derived from the initial turbine failures. As a result, USM incurred significant covered losses that ACE refused to reimburse. *Id.* at ¶38.

### D.    Relevant Procedural Posture

#### 1.    The Pennsylvania Action

On April 9, 2025, US Mag filed its complaint against ACE in the Court of Common Pleas, Philadelphia County, Pennsylvania—ACE's home forum. *See* USM Compl. ¶6. USM asserted a single breach of contract claim arising out of ACE's failure and refusal "to pay USM's full losses as they are required to do under the All Risk Policy." *Id.* at ¶45. According to USM, "ACE's breaches have caused USM monetary damages in excess of the All Risk Policy's limits, not including interest and fees, which should also be awarded to USM." *Id.* at ¶49. On May 9, 2025, after obtaining an extension of time, ACE answered USM's complaint in the Pennsylvania Action, but did not challenge venue. ACE denied that it breached its obligations under the All Risk Policy and asserted its defenses to USM's breach of contract claim. Answer at ¶¶41-49, New Matter ¶¶1-

40.[4]  On May 29, 2025, USM filed its Reply to New Matter.[5]  Accordingly, the pleadings are now closed in the Pennsylvania Action, and the parties will proceed to the merits of USM's claim.

### 2.    The Utah Action

Also on May 9, 2025, ACE filed its complaint in this action.  ACE seeks a declaration that it did not breach the All Risk Policy, and a declaration that it did not breach the subsequent 2021-2022 policy issued to USM—even though USM does not seek to recover under this latter policy. Compl. ¶¶65, 70.  ACE also alleges that it "handled" and "investigated" USM's claim through Starr in California.  Compl. ¶¶31, 44.  Starr is a citizen of New York for purposes of diversity jurisdiction.[6]

Although not relevant to USM's insurance claim, ACE set out several allegations relating to its unsupported view that the parties' dispute should be resolved in a Utah forum.  Compl. ¶¶48-61.  ACE also retained USM's long-time outside general counsel firm Parsons Behle & Latimer ("Parsons Behle") to represent it in this action.  Parsons Behle represented USM for more than a quarter of a century, providing legal advice to USM in many different areas, including insurance coverage matters, business operations, and corporate and regulatory work before, during, and after the events that gave rise to the current dispute with ACE.  USM has identified Parson Behle's

---

[4] A true and correct copy of ACE American Insurance Company's Answer to Plaintiff US Magnesium, LLC's Complaint (the "Answer") and New Matter (the "New Matter") are attached hereto as **Exhibit A**.

[5] A true and correct copy of Plaintiff US Magnesium, LLC's Reply to Defendant ACE American Insurance Company's New Matter is attached hereto as **Exhibit B**.

[6] True and correct copies of printouts from the California Department of Insurance (https://cdicloud.insurance.ca.gov/cal/BusinessNameSearch?handler=Search) related to Starr are attached hereto as **Group Exhibit C**.

conflict here and requested that the firm withdraw. Parson Behle thus far has declined, which may necessitate motion practice on disqualification of the firm. [7]

## III.    ARGUMENT

This Court cannot and, even if it could, should not proceed to hear ACE's declaratory judgment action. First, courts have held that the Anti-Injunction Act, 28 U.S.C. § 2283, precludes the issuance of the declaratory relief ACE seeks in this action. Because USM's first-filed Pennsylvania Action is proceeding, the issuance of a subsequent declaratory judgment here would be tantamount to issuing an injunction against USM's continuation of the Pennsylvania Action, providing ACE an end-run around the requirements of the Anti-Injunction Act.

Second, even if this Court has such authority, it should decline to exercise jurisdiction in favor of USM's first-filed Pennsylvania Action pursuant to the *Wilton/Brillhart* abstention doctrine in light of the Tenth Circuit's *Mhoon* factors. For either of these reasons, this Court should grant USM's Motion and dismiss or stay this action.

### A.    THIS COURT LACKS AUTHORITY TO CONSIDER ACE'S DECLARATORY JUDGMENT ACTION

The federal Anti-Injunction Act, 28 U.S.C. § 2283, precludes this Court from granting ACE declaratory relief in this action. It does not appear that the Tenth Circuit has addressed the Anti-Injunction Act in this precise scenario, but other courts have followed "the weight of authority in holding that 'if an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction.'" *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988) (quoting Wright, Federal Courts § 47 at 285 (4th Ed. 1983)); *see also Chandler v. O'Bryan*, 445 F.2d 1045, 1058 (10th Cir. 1971) (agreeing

---

[7] True and correct copies of the letters exchanged between Blank Rome LLP and Parsons Behle & Latimer are attached hereto as **Group Exhibit D**.

that "where an injunction is improper under [28 U.S.C.] § 2283, declaratory relief should not be given").

The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This act establishes an "absolute prohibition" on enjoining state court proceedings unless the injunction falls within one of the three expressly defined exceptions. *Ins. Co. of Pa. v. Sabre, Inc.*, 918 F. Supp. 2d 596, 599 (N.D. Tex. 2013) (citation omitted). This prohibition is a "pillar of federalism reflecting the fundamental constitutional independence of the states and their courts." *Jackson*, 862 F.2d at 505. As such, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engr's*, 398 U.S. 281, 297 (1970).

In light of these overarching principles of federalism, courts in the Fifth Circuit have determined that a "district court has no authority to consider a declaratory judgment action when: '(1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [the Anti-Injunction Act].'" *Sabre, Inc.*, 918 F. Supp. 2d at 598-599 (quoting *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 n.1 (5th Cir. 2003)). Each of these conditions is present here, and this Court should follow this persuasive reasoning.

First, USM filed the Pennsylvania Action in state court on April 9, 2025. Compl. ¶49. ACE did not file this action until a month later. *See Sabre, Inc.*, 918 F. Supp. 2d at 599 (finding

9

"no dispute" as to the first condition where insured filed its state court action before the insurer filed its federal court action).

Second, both the Pennsylvania Action and this action involve the same insurance dispute. In the Pennsylvania Action, USM seeks to recover damages due to ACE's breach of its obligations under the All Risk Policy, and in this action, ACE seeks a declaration "that it has not breached the [All Risk Policy]." Compl. ¶65. The second condition is therefore also satisfied.

Third, this Court is prohibited from enjoining the Pennsylvania Action under the Anti-Injunction Act, and no exception applies. *See Sabre, Inc*., 918 F. Supp. 2d at 599 ("The exceptions listed in the Act are exclusive, and if none applies, then the Act establishes 'an absolute prohibition' on enjoining state court proceedings.") (quoting *Royal Ins. Co. of Am. v. Quinn-L Capital Corp*., 3 F.3d 877, 885 (5th Cir. 1993)). "The first exception, express authorization by Congress, does not apply here because . . . Congress has not expressly authorized injunctions of state insurance coverage claims." *Penn Gen. Ins. Co. v. CaremarkPCS*, No. Civ.A.3:05-CV-0844-G, 2005 WL 2041969, at *4 (N.D. Tex. Aug. 24, 2005) (unpublished). The second exception, "necessary in aid of its jurisdiction," does not apply because the Pennsylvania Action was not removed, and no real property is at issue. *See id*. at *5 (noting that the second exception "generally only applies when a case is removed from state to federal court or where a federal court first acquires jurisdiction over real property"). The third exception, to protect or effectuate its judgments, does not apply because there has been no prior federal litigation between ACE and USM regarding coverage for USM's insurance claim. *See id*. (stating that the third exception "has

10

been referred to as the 'relitigation exception,'" designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court").[8]

This Court should follow this persuasive reasoning and conclude that if it is prohibited from granting injunctive relief pursuant to the Anti-Injunction Act, then it is also prohibited from granting ACE declaratory relief.  *See Chandler*, 445 F.2d at 1058 (agreeing that "where an injunction is improper under [28 U.S.C.] § 2283, declaratory relief should not be given") (citation omitted).

### B.    ALTERNATIVELY, THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THIS ACTION IN FAVOR OF THE PENNSYLVANIA ACTION

Even if this Court has authority to hear ACE's claim, it should decline to exercise jurisdiction pursuant to the *Wilton*/*Brillhart* abstention doctrine, and therefore dismiss or stay this action.

#### 1.    This Court Has Discretion Under the Declaratory Judgment Act to Decline Jurisdiction Under the *Wilton*/*Brillhart* Abstention Doctrine

##### a.    *Wilton/Brillhart* Abstention and the *Mhoon* Factors

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not give ACE an absolute right to a declaratory judgment.  *See Brillhart*, 316 U.S. at 494 ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act … it was under no compulsion to exercise that jurisdiction.").  Instead, whether to allow ACE's declaratory judgment action to proceed is within the discretion of this Court.  *See Wilton*, 515 U.S. at 282

---

[8] The potential for ACE to file a *forum non conveniens* motion in the Pennsylvania Action (which is meritless anyway) does not change this analysis.  *See Sabre, Inc.*, 918 F. Supp. 2d at 599 (rejecting insurer's argument that the "strong connections of this case to Texas … should carry the day").  Any connections this case may have to Utah, even if they exist, do not "play any role in determining whether the Anti-Injunction Act applies to a particular case."  *Id.*

("*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act[.]"). Indeed, there is "nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court to hear a declaratory judgment action." *Id.* at 288 (citation omitted).

In this Circuit, district courts consider the five factors set forth in *State Farm Fire & Casualty Company v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), to determine whether to exercise jurisdiction over a declaratory judgment action:

> (1)     Whether the declaratory action would settle the controversy;
>
> (2)     Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3)     Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata";
>
> (4)     Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5)     Whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)). "Although the federal court is not required to refuse jurisdiction … it should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (citations omitted); *see also U.S. v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002) (noting that "the *Mhoon* factors clearly encompass inquiry into the proceedings' similarity"). Indeed, "it would be uneconomical as well as vexatious for a federal court" to entertain a declaratory judgment action when the same parties are litigating the same issues in state court. *Brillhart*, 316 U.S. at 495. This is the situation that exists here.

### 2. Application of the *Mhoon* Factors Strongly Supports Declination of Jurisdiction

#### a. Whether the Federal Action Would Settle the Controversy

The first factor strongly supports this Court's declination of jurisdiction. This factor focuses on whether "the controversy would be better settled in state court." *City of Las Cruces*, 289 F.3d at 1187. The only issue before this Court is whether ACE breached its obligations under the All Risk Policy when it denied coverage for USM's claim.[9] That same issue currently is being litigated in the Pennsylvania Action between the same parties with identical questions of law and fact. In *St. Paul Fire & Marine Insurance Company v. Runyon*, the Tenth Circuit addressed this precise scenario when it affirmed the district court's decision to decline jurisdiction. There, the insurer filed a federal declaratory judgment in federal court, and the insured filed a breach of contract action in state court. *Runyon*, 53 F.3d at 1168. The court noted that the "issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action" – whether the policy at issue provided coverage to the insured. *Id.* at 1169. "Because the state court will determine, under state contract law, whether the [underlying] tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract." *Id.*; *see also Prime Ins. Co. v. GKD Mgmt. LP*, No. 220CV00252RJSJCB, 2020 WL 7698789, at *3 (D. Utah Dec. 28, 2020) ("Generally, when the insurance company is a party in both federal and state court, there is no need for the declaratory judgment action in federal court because the state court has the capacity to resolve the entire matter.") (unpublished) (citations and quotation marks omitted).

---

[9] As noted above, USM does not seek coverage under the subsequent 2021-22 Policy. Accordingly, there is no actual controversy between the parties for purposes of Count II of ACE's Complaint.

The same analysis applies here.  The coverage questions at issue in this action will be answered in the Pennsylvania Action.  *See Runyon*, 53 F.3d at 1170 (noting that a federal court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding"); *compare Farm Bureau Prop. & Cas. Ins. Co. v. Sparks*, No. 1:20-cv-00044-JNP-JCB, 2021 WL 321951, at *4 (D. Utah Jan. 29, 2021) (finding that first *Mhoon* factor weighed in favor of jurisdiction where insurer was *not a party* to state court case) (unpublished) (Parrish, J.).  This factor weighs in favor of declining jurisdiction.

ACE's allegations relating to Starr also raise questions as to whether Starr is a necessary and indispensable party to this action.  ACE, for example, alleges that the All Risk Policy required USM to report any loss to Starr, that ACE "handled the claim through [Starr]," and that "ACE, through Starr and its adjuster and consultants, investigated these claims and determined that the alleged drier collapses and electrolytic cell replacements were not connected to the 2021 turbine losses."  Compl. ¶¶24, 31, 44.  ACE then contends that USM "failed to cooperate in ACE's investigation" and "breached the 2020-2021 Policy's condition to give timely notice of the claimed property damage and business interruption losses."  Compl. ¶¶65j, 65m.  Starr, however, is a citizen of New York for purposes of diversity jurisdiction.  USM, a limited liability company, has a member that also is a citizen of New York.  Thus, Starr cannot be joined as a plaintiff in this action, but may be joined in the Pennsylvania Action.  The Pennsylvania Action can provide complete relief among the parties if Starr is a necessary and indispensable party.

### b.    Whether the Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relations at Issue

The second *Mhoon* factor typically is considered together with the first factor.  *See, e.g.*, *City of Las Cruces*, 289 F.3d at 1187 (considering the first two factors together and noting that

both factors "shed light on the overall question of whether the controversy would be better settled in state court"). Here, the second factor also weighs against accepting jurisdiction because, unlike the Pennsylvania Action, this action serves no useful purpose.

First, ACE does not seek proper declaratory relief because ACE seeks a declaration of non-liability for its past breach. USM alleges in the Pennsylvania Action that "ACE's refusal to pay USM's claim is in breach of the All Risk Policy, and ACE's payment obligation is now long overdue." USM Compl. ¶48. Therefore, USM seeks damages as a result of ACE's breach. *Id.* According to ACE, its June 2023 payment "fully compensates [USM] for covered losses directly connected to the June 24, 2021 turbine outage." Compl. ¶36. ACE therefore seeks a declaration that "ACE has not breached the 2020-2021 Policy." Compl. ¶65. But a "declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability *for a past act*." *Lawrence v. Kuenhold*, 271 Fed. Appx. 763, 766 (10th Cir. 2008) (unpublished) (emphasis added); *see also Gonzalez v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00286-DN, 2013 WL 2456397, at *1 (D. Utah June 6, 2013) ("Declaratory relief is untimely and inappropriate in this case, because the questionable conduct has already occurred or damages have already accrued.") (unpublished); *Scarborough v. LaSalle Bank*, No. 2:10-CV-0624-CW, 2011 WL 1549432, at *3 n.3 (D. Utah Apr. 21, 2011) (noting that "causes of action for declaratory judgment can be dismissed independently for failure to state a claim" where damages have already occurred) (unpublished). USM has incurred damages due to ACE's breach, and there is nothing left to "declare" in this action.

Second, ACE's liability necessarily will be decided in the Pennsylvania Action. *See Freedom Holding Corp. v. Est. of Tolmakov*, No. 2:20-CV-67 TS, 2021 WL 1753569, at *2 (D. Utah May 4, 2021) (holding that continuation of the federal "action will serve no useful purpose"

where state action included same claims, same parties, and same questions of law and fact) (unpublished).  The Tenth Circuit has noted that it may be "[e]specially relevant" that the state court action necessarily will resolve the issues in the federal declaratory judgment action.  *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 982 n.3 (10th Cir. 2012).  The Pennsylvania Action will resolve the parties' insurance coverage dispute, and there is no useful purpose in duplicating those efforts in this action.

### c.    Whether the Declaratory Remedy is Being Used Merely for the Purpose of Procedural Fencing

This Court should not countenance ACE's procedural gambit.  By filing this action on the same day that ACE answered USM's complaint in the Pennsylvania Action, ACE engaged in precisely the sort of "procedural fencing" and race to res judicata that the third *Mhoon* factor holds should militate *against* acceptance of federal jurisdiction.  *See Runyon*, 53 F.3d at 1170 ("A district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing.").  In this action, ACE seeks to have this Court adjudicate its defenses to USM's pending breach of contract action so that ACE can then assert res judicata in the Pennsylvania Action.  *See id.* ("The federal district court also refused jurisdiction because it perceived St. Paul was using the declaratory judgment action to provide an arena for a race to *res judicata*."); *see also Freedom Holding Corp.*, 2021 WL 1753569, at *2 ("With the ongoing probate action, there is a risk that Plaintiffs are attempting to use this action for procedural fencing."); *Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-CV-00560-REB-MEH, 2014 WL 811993, at *18 (D. Colo. Mar. 3, 2014) (noting that the "Tenth Circuit has recognized 'procedural fencing' and 'a race to res judicata' where an identical or substantially similar action is proceeding in state court") (unpublished).

ACE does not even try to hide its procedural gamesmanship.  ACE dedicates an entire

16

section of its Complaint to allegations related to its desire to secure a Utah forum, even though those allegations have nothing to do with the parties' substantive insurance coverage dispute and even though the Pennsylvania Action is pending in ACE's own *home forum*. Ex. A, Answer ¶6. But the Declaratory Judgment Act is not to be used as a tactical device in an insurer's attempt to forum-shop. *See AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) (stating that "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act").[10] This is especially true where USM—the party that suffered damages—is the "natural plaintiff" in this dispute. *See, e.g.*, *Mut. of Omaha Ins. Co. v. Rodriguez*, No. 09-2100-EFM, 2009 WL 3672513, at *3 (D. Kan. Nov. 2, 2009) ("While it is true that Plaintiff's actions do not conclusively prove that it was engaged in procedural fencing, they do, at a minimum, raise a very strong inference that Plaintiff is attempting to wrest the choice of forum from the 'natural' plaintiff.") (unpublished) (citations omitted).

ACE concedes that its insuring activity—the issuance of the All-Risk Policy and claims handling—all took place in California, not Utah. Compl. ¶¶11, 31. ACE also alleges that it was Starr that actually "investigated" and "handled" USM's claim, thereby injecting a new party into this insurance dispute. *Id.* at ¶¶31, 44. Yet, ACE did not name Starr as a co-plaintiff in this action, perhaps knowing that Starr's inclusion in this action would destroy diversity and sabotage ACE's ploy to move this dispute to federal court.[11] ACE's allegations relating to Starr's involvement and

---

[10] The Tenth Circuit utilizes the same factors used by the Sixth Circuit. *See Mhoon*, 31 F.3d at 983 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

[11] *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

handling of USM's insurance claim also raise questions as to whether Starr is a necessary and indispensable party to this action, which will need to be addressed and resolved before this Court can turn to the parties' substantive insurance dispute. *Cf. Sharkey v. Spatafore*, No. 2:23-CV-00561-JNP, 2023 WL 5938186, at *2 (D. Utah Sept. 12, 2023) ("Because Eaquinta may not be joined to this action without destroying diversity jurisdiction, the court dismisses this action without prejudice for failure to join an indispensable party.") (unpublished) (Parrish, J.). Moreover, in its hurried race to attempt to establish res judicata, ACE also appears to have neglected to perform even cursory diligence to ensure that its selected counsel did not also serve as USM's long-time outside general counsel firm. This Court also will need to address this conflict issue before it can address the merits of the parties' dispute. This factor also weighs in favor of declining to exercise jurisdiction.

### d.    Whether the Use of a Declaratory Judgment Action Would Increase Friction Between Federal and State Courts and Improperly Encroach Upon State Jurisdiction

The fourth *Mhoon* factor also weighs against jurisdiction. This factor considers whether the declaratory action "would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mhoon*, 31 F.3d at 983. The Tenth Circuit has recognized that when state law controls, state courts are "uniquely suited to resolve the dispute." *Mid-Continent Cas. Co.*, 685 F.3d at 986. This is true regardless of which state's law applies to the parties' dispute because "state courts are capable of applying the appropriate choice of law rules." *Id.*

USM's Pennsylvania Action asks the court to determine if ACE breached its obligations under the All Risk Policy and, if so, determine the amount of USM's damages. ACE's declaratory judgment claim in this action asks this Court to determine the same issue—"a declaration that [ACE] has not breached" the All Risk Policy. Compl. ¶66. Because the same parties are simultaneously litigating the same issues in both courts, there is a risk of inconsistent rulings.

There also is a real risk that this Court and the court in the Pennsylvania Action reach different conclusions as to which state's law even applies to the parties' dispute. Utah courts look to the state that has the "most significant relationship to the transaction and the parties." *Gladys Stirn, Inc. v. Mut. of Enumclaw Ins. Co.*, No. 2:20-CV-00838-JNP, 2021 WL 12313769, at *2 (D. Utah June 4, 2021) (unpublished) (Parrish, J.).[12] Pennsylvania courts, in contrast, use "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy).'" *Oneida Plaza, LLC v. Ohio Sec. Ins. Co.*, No. CV 20-4485, 2022 WL 254571, at *4 (E.D. Pa. Jan. 27, 2022) (unpublished) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007)). If this action proceeds, the parties will be litigating the same issues in two different forums, potentially under two different state laws. That is an unnecessary and wasteful exercise, especially considering that the parties will also be required to duplicate discovery between the two actions, including depositions of parties and witnesses.

USM's first-filed Pennsylvania Action will proceed, and there is a risk that this Court may encroach on the state court's jurisdiction if it exercises its discretion to hear ACE's claim. No federal issue is involved in this action, and the Pennsylvania court is well-suited to determine issues of state law. *See Mid-Continent Cas. Co.*, 685 F.3d at 986 (agreeing with district court's conclusion that "the Missouri state court is better situated to determine Mid-Continent's coverage obligations because the action would involve a matter of state law, i.e., the interpretation of an insurance contract"); *see also Liberty Mut. Ins. Co. v. Thomas*, No. CIV-21-1093-SLP, 2024 WL 4094293, at *3 (W.D. Okla. Sept. 5, 2024) (finding insurer's federal declaratory judgment action

---

[12] "In a diversity case, federal courts are to apply the choice-of-law rules of the state in which they sit." *Id.*

improperly encroached upon state jurisdiction where "coverage dispute involves a question of state law and was first presented to the state court" and insurer was a party to the state action) (unpublished); *Farmers Ins. Co. of Arizona v. Komis*, No. 1:17-CV-00703 WJ/JHR, 2017 WL 6372663, at *4 (D.N.M. Dec. 12, 2017) (fourth factor weighed against jurisdiction where state law governed insurance dispute, there were no federal issues, and there was a state court proceeding involving the same parties and same issues) (unpublished); *Nationwide Mut. Ins. Co. v. C.R. Gurule, Inc.*, 148 F. Supp. 3d 1206, 1229 (D.N.M. 2015) (noting that courts have found that cases involving the same issues pending before a state court to be "an important factor in determining whether exercising jurisdiction would create friction") (unpublished); *compare Farm Bureau Prop. & Cas. Ins. Co.*, 2021 WL 321951, at *6 ("since [the insurer] is not a party to the Underlying Lawsuit, and the issue of insurance coverage is not before the state court, there is little if any reason to believe that a ruling from this court on the coverage issue would cause friction with the state court") (Parrish, J). Accordingly, the fourth factor also weighs in favor of declining jurisdiction.

### e. Whether There is an Alternative Remedy Which is Better or More Effective

The fifth and final *Mhoon* factor also weighs against assuming jurisdiction. "This factor requires the court to determine whether the state court is 'simply better situated to provide complete relief to all parties involved in the ... dispute.'" *Freedom Holding Corp.*, 2021 WL 1753569, at *3 (quoting *Mid-Continent Cas. Co.*, 685 F.3d at 986). Here, ACE already denied that it breached the All Risk Policy when it answered USM's complaint in the Pennsylvania Action and asserted its defenses. *See Runyon*, 53 F. 3d at 1169 (declining jurisdiction where the "issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action"). As the Supreme Court aptly noted:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495. There is no compelling reason to depart from this sound reasoning here. This case should be dismissed.

### 3.      Alternatively, this Action Should Be Stayed

To the extent this Court concludes that dismissal of this action under *Wilton/Brillhart* and *Mhoon* is unwarranted, USM requests that the Court stay this action pending resolution of the Pennsylvania Action. *See Wilton*, 515 U.S. at 288-90. The Pennsylvania court necessarily will adjudicate the overlapping issues presented in this action, and staying this action will avoid inconsistent determinations.

## IV.    CONCLUSION

For the foregoing reasons, USM requests that the Court decline to exercise jurisdiction and accordingly dismiss this action in its entirety or, alternatively, stay the action pending disposition of the Pennsylvania Action.

Dated: June 9, 2025                           Respectfully submitted,

                                              */s/* Michael R. Johnson

                                              Michael R. Johnson (7070)
                                              Matthew M. Cannon (11265)
                                              **RAY QUINNEY & NEBEKER P.C.**
                                              36 South State Street, Suite 1400
                                              P. O. Box 45385
                                              Salt Lake City, UT 84145-0385
                                              Tel: (801) 532-1500
                                              Fax: (801) 532-7543
                                              mjohnson@rqn.com
                                              mcannon@rqn.com

Jason A. Snyderman (*pro hac vice* pending)
John P. Wixted (*pro hac vice* pending)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Tel:  (215) 569-5774
Fax:  (215) 832-5774
Jason.Snyderman@BlankRome.com
John.Wixted@BlankRome.com

John A. Gibbons (*pro hac vice* pending)
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC 20006
Tel:  (202) 420-3644
Fax:  (202) 379-9118
John.Gibbons@BlankRome.com

Jason Frye (*pro hac vice* pending)
**BLANK ROME LLP**
444 West Lake St., Suite 1650
Chicago, IL 60606
Tel:  (312) 776-2600
Fax:  (312) 275-8146
Jason.Frye@BlankRome.com

*Attorneys for Defendant US Magnesium, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, which sent notification of such filing to all electronic filing users in this case.

<u>/s/ Annette Sanchez</u>
Annette Sanchez