Erik A. Christiansen, USB #7372
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
EChristiansen@parsonsbehle.com
ecf@parsonsbehle.com

Philip C. Silverberg (*pro hac vice*)
Guyon H. Knight (*pro hac vice*)
**MOUND COTTON WOLLAN & GREENGRASS LLP**
One New York Plaza
New York, New York 10004
Telephone: 212.804.4200
psilverberg@moundcotton.com
gknight@moundcotton.com

*Attorneys for Plaintiff ACE American Insurance Company*

---

THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>  Plaintiff,<br>v.<br><br>U.S. MAGNESIUM, LLC,<br><br>  Defendant. | **RESPONSE TO US MAGNESIUM'S MOTION TO DISMISS OR STAY**<br><br>Case No. 2:25-cv-00371-JNP<br><br>District Judge: Hon. Jill N. Parrish<br><br>Magistrate Judge: Hon. Dustin B. Pead |

Plaintiff ACE American Insurance Company ("ACE"), by and through its undersigned counsel, respectfully submits this Response to the Motion to Dismiss or Stay (Dkt. 9) filed by Defendant US Magnesium, LLC ("US Magnesium").

## I.    RESPONSE TO SPECIFIC RELIEF SOUGHT AND THE GROUNDS FOR DENYING THE RELIEF

US Magnesium asks this Court to countenance egregious forum-shopping. US Magnesium seeks insurance coverage for a series of unrelated events that took place in 2021 and 2022 at its

magnesium production facility in Rowley, Utah. These losses were investigated in Utah using data produced from Utah by US Magnesium, a Utah-headquartered company. Yet when US Magnesium went to court, it did not sue in Utah—it sued more than 2,000 miles away in Philadelphia, Pennsylvania (the "Pennsylvania Action"). US Magnesium has not identified a single relevant action that occurred in Pennsylvania, or a single relevant witness or document in that state. Yet rather than owning up to and defending its forum-shopping, US Magnesium takes the shocking position that this Utah dispute may not have any connections to Utah, stating: "Any connections this case **may** have to Utah, ***even if they exist***, do not 'play any role in determining whether the Anti-Injunction Act applies to a particular case.'" Mot. at 11 n.8 (emphases added).

Beyond this stunning assertion, US Magnesium argues that this Court lacks jurisdiction over this action, or alternatively should decline jurisdiction, because this action supposedly overlaps completely with the Pennsylvania Action. That is not the case. The Pennsylvania Action involves only the insurance policy covering the period from 2020-2021. This action addresses both that policy *and* the policy covering 2021-2022 (when most of US Magnesium's claimed losses occurred). To get around this dispositive fact, US Magnesium makes another shocking argument. US Magnesium tells this Court that the two cases do overlap because there is "no actual controversy between the parties" on the policy covering 2021-2022. Mot. at 13 n.9. But US Magnesium has taken the opposite position in Pennsylvania, telling that court that US Magnesium "***does not waive any rights of recovery it may have under the 2021-2022 policy***." Ex. 2, ¶ 37 (emphasis added).

Nothing in the law requires this Court to give way to such sharp litigation practice. This Court should retain jurisdiction over this action and deny US Magnesium's Motion.

2

## II.    BACKGROUND

Despite US Magnesium's insistence that this case's connections to Utah may not "even … exist" (Mot. at 11 n.8), the pleadings and record—which the Court can consider on this Motion, *see, e.g.*, *Ogden Reg'l Airport Ass'n, Inc. v. Ogden City Airport & Ogden City*, No. 1:21-cv-75-DBB-DBP, 2022 WL 103792, at *3 (D. Utah Jan. 11, 2022) (unpublished)—all confirm that this case should be decided in Utah, not Pennsylvania.

### A.    US Magnesium's Headquarters In Salt Lake City, Its Magnesium Production Facility In Rowley, Utah, And Its Purchase Of Insurance Policies Issued From California To Utah

US Magnesium, which is headquartered in Salt Lake City, Utah, owns and operates a magnesium production facility in Rowley, Utah (the "Facility"). *See* Dkt. 1 ("Compl.") ¶ 26. The magnesium-production process involves isolating magnesium chloride salts from the Great Salt Lake and then processing those salts through a variety of machinery. *See id.* ¶ 27. The entire process happens at the Facility in Rowley.

At the time of the claimed losses, and for decades before that, US Magnesium purchased property insurance policies underwritten by Starr Technical Risks Agency, Inc. ("Starr"). *See* Ex. 5, ¶¶ 2, 4. Starr underwrote the policies in its capacity as a "managing general agent" or "managing general underwriter" for other licensed insurance companies. *See id.* ¶ 6. At the time relevant to this action, the licensed insurer that issued the policies was ACE. *See id.* ¶ 8. Under this arrangement (which is common in the insurance industry), Starr was responsible for all negotiations, underwriting, claims handling, payment processing, and the overall relationship with the insured. *See id.* ¶ 6.

The Starr underwriter principally responsible for the US Magnesium account was Raymond Walshe, who is based in Los Angles, California. *See* Ex. 5, ¶¶ 3-4. US Magnesium and its Utah-based insurance broker knew that Starr was responsible for underwriting the policies. *See*

*id.* ¶ 7. Indeed, Mr. Walshe made multiple visits to Utah to meet with US Magnesium, and US Magnesium personnel repeatedly visited the Los Angeles area to meet with Mr. Walshe (including on trips to Disneyland). *See id.* ¶ 4.

Mr. Walshe executed insurance policy number EPRN18214775, which covered US Magnesium during the period from August 31, 2020 to August 31, 2021 (the "2020-2021 Policy"). *See* Ex. 5, ¶ 8; *see also* Compl., Ex. A. Mr. Walshe also executed insurance policy number EPRN18229900, which covered US Magnesium during the period from August 31, 2021 to October 1, 2022 (the "2021-2022 Policy"). *See* Ex. 5, ¶ 8; *see also* Compl., Ex. B. Mr. Walshe executed both Policies in Los Angeles, and the Policies were then sent to US Magnesium's headquarters in Salt Lake City. *See* Ex. 5, ¶¶ 12, 13.

The Facility in Rowley accounts for more than 95% of the value of properties covered by the Policies. *See* Ex. 5, ¶ 11. Neither of the Policies covers property located in Pennsylvania. *See id.*

## B. Starr, On Behalf Of ACE, Investigates The Alleged Losses That Occurred At The Facility In Rowley, Utah

In March 2021, a mechanical failure allegedly occurred at the Facility, affecting one of the gas turbines used in the magnesium production process. *See* Compl. ¶ 28. In June 2021, another turbine at the Facility experienced an alleged failure. *See id.* ¶ 29. All of these claimed losses occurred in Rowley, Utah.

Starr retained Christopher Nimr of Crawford Technical Services to act as the independent adjuster investigating these claimed losses. *See* Ex. 4, ¶ 6. Mr. Nimr arranged the retention of numerous consultants to assist his investigation of the losses. *See id.* ¶¶ 9-11. Neither Mr. Nimr nor any of the consultants was based in Pennsylvania. *See id.* ¶ 7.

On February 1, 2022, Mr. Nimr visited the Facility in Rowley along with a consultant assisting with the investigation. *See* Ex. 4, ¶ 14. Mr. Nimr met with US Magnesium's CEO, Ron Thayer, and its CFO, Paula Chu. *See id*. ¶¶ 12, 14. Both Mr. Thayer and Ms. Chu are based in Utah. *See id*. ¶ 12; Ex. 6, ¶ 11.

In January or February 2022, US Magnesium allegedly experienced an unrelated equipment failure at the Facility in Rowley. *See* Compl. ¶ 37. Over the next several months, US Magnesium allegedly lost functionality of many electrolysis cells, also in unrelated events. *See id*. ¶ 38. All of these claimed losses took place in Utah.

To investigate these new claimed losses, on December 1, 2022, Mr. Nimr again visited US Magnesium's facility in Rowley along with Sean Honore, one of the consultants assisting with the investigation. *See* Ex. 4, ¶ 15; Ex. 6, ¶ 12. During this visit, they again met with Ms. Chu and Mr. Thayer of US Magnesium. *See* Ex. 4, ¶ 15; Ex. 6, ¶ 12.

As part of his investigation into the claimed losses, Mr. Nimr sent requests for information to US Magnesium personnel based in Utah. *See* Ex. 4, ¶ 17; Ex. 6, ¶ 13. Mr. Honore helped craft these requests. *See* Ex. 6, ¶ 13. US Magnesium informed Mr. Honore that certain of the data he requested was located solely on-site at the Facility in Rowley, and was too large to send electronically or by mail. *See id*. Mr. Honore therefore traveled back to the Facility to identify and collect the data. *See id*. ¶¶ 13, 14. At this subsequent visit, Mr. Honore interacted with Martin Davis, US Magnesium's Electrical and Instrument Manager for the Facility. *See* Ex. 3, ¶¶ 11, 14. Mr. Davis is based at the Facility in Rowley, Utah. *See id*. ¶ 11.

In the summer of 2023, Starr arranged for the payment of nearly $4 million to US Magnesium for the June 2021 loss. *See* Compl. ¶ 35.

### C.    US Magnesium Files A Peremptory Action In Philadelphia, Pennsylvania, And ACE Moves To Dismiss For *Forum Non Conveniens*

In early 2025, the parties were coordinating a principals' meeting in the hopes of resolving the claim to be held at US Magnesium's headquarters in Salt Lake City. *See* Compl. ¶ 48. In February 2025, Starr provided dates of availability for a meeting. *See id.* US Magnesium did not respond. *See id.*

The reason became clear on April 9, 2025, when US Magnesium, without providing any advance notice, filed a lawsuit seeking additional coverage for its claimed losses in 2021 and 2022. *See* Compl. ¶ 48. US Magnesium did not file suit in Utah, where the claimed losses took place, where the relevant data and witnesses are located, and where US Magnesium is headquartered. US Magnesium instead filed in the Court of Common Pleas in Philadelphia, Pennsylvania. *See id.* The one and only basis US Magnesium identified for filing suit in Philadelphia is that ACE—the company that issued the Policies, but which did not underwrite the Policies or handle the claim— has its principal place of business there. *See id.* ¶ 50.

US Magnesium did not sue under the 2021-2022 Policy in the Pennsylvania Action, even though most of the claimed losses occurred in 2022. *See* Compl. ¶ 57. This decision may have been motivated by the deductible in the 2021-2022 Policy, which exceeds the value of US Magnesium's claimed losses that occurred during that policy year. *See id.* ¶ 41. By filing suit only under the 2020-2021 Policy, US Magnesium could take the position that all of the claimed losses are subject to a single deductible that was exhausted by the $4 million payment Starr arranged in 2023. *See id.*

On May 9, 2025, ACE filed this declaratory judgment action. Count I of ACE's Complaint seeks a declaration that no coverage is available under the 2020-2021 Policy. *See* Compl. ¶¶ 62-66. Count II seeks a declaration that no coverage is available under the 2021-2022 Policy. *See id.*

¶¶ 67-71. Because US Magnesium did not sue under the 2021-2022 Policy in the Pennsylvania Action, that Policy is at issue only in this action, in Utah.

Also on May 9, 2025, ACE answered the complaint in the Pennsylvania Action. *See* Ex. 1. ACE's answer included "new matter," including the observation that US Magnesium had chosen not to sue under the 2021-2022 Policy. *Id.*, New Matter ¶ 37. On May 29, 2025, US Magnesium replied to ACE's answer and stated that its claim is "fully covered by [the] 2020-2021 Policy." *See* Ex. 2, ¶ 37. But US Magnesium did not relinquish its rights under the 2021-2022 Policy; instead, US Magnesium asserted that it "does not waive any rights of recovery it may have under the 2021-2022 policy. *Id.*

On June 20, 2025, ACE moved to dismiss the Pennsylvania Action pursuant to the doctrine of *forum non conveniens*. ACE's motion and accompanying affidavits are attached as Exhibits 3 through 6. ACE showed in its motion that every one of the factors courts consider weighed against hearing the dispute in Philadelphia, and in favor of hearing it in Utah. Specifically:

1.  Utah is an available, convenient forum to hear the dispute. *See* Ex. 3, ¶¶ 22-24.

2.  The sources of proof are in Utah, where the Facility and US Magnesium's data and witnesses are located, while no witnesses or evidence is located in Pennsylvania. *See id.* ¶¶ 28-29.

3.  ACE will not be able to compel witnesses to attend a trial in Pennsylvania. *See id.* ¶ 30.

4.  A Philadelphia jury will not be able to visit the Facility, while a Utah jury could. *See id.* ¶ 31.

5.      The parties will already be in Utah for depositions and site inspections, meaning that it would be burdensome and pointless to fly back across the country for trial in Philadelphia. *See id.* ¶ 32.

6.      The District of Utah is less congested than the Court of Common Pleas in Philadelphia. *See id.* ¶¶ 35-38.

7.      It makes no sense to burden a Philadelphia jury with a potentially lengthy trial of a Utah-centered dispute. *See id.* ¶ 39.

8.      Utah law governs the dispute. *See id.* ¶¶ 40-42.

US Magnesium's response to ACE's *forum non conveniens* motion is due by July 14, 2025.

## III.    ARGUMENT

US Magnesium argues that this Court lacks jurisdiction over this Utah-centered dispute, or alternatively should decline jurisdiction. But all of US Magnesium's arguments are predicated on the incorrect position that this action and the Pennsylvania Action present identical issues. In fact, only this case will decide coverage under the 2021-2022 Policy, and none of the discretionary factors compel this Court to defer hearing this case to a Pennsylvania court that will hear Utah facts and apply Utah law.

### A.    US Magnesium's Motion Does Not Apply To Count II Of The Complaint, Which Has No Parallel In The Pennsylvania Action

To start, the Court need not consider any of US Magnesium's arguments because all of them apply only to Count I of ACE's Complaint, which seeks a declaration concerning the 2020-2021 Policy. Count II, which seeks a declaration concerning the 2021-2022 Policy, has no parallel in the Pennsylvania Action. As such, the Court can retain jurisdiction over Count II and need not decide at this time whether it should also hear Count I.

US Magnesium admits, as it must, that Count I is the only cause of action in ACE's Complaint that overlaps with the Pennsylvania Action. US Magnesium tries to get around this issue by arguing that it "does not seek coverage under the subsequent 2021-22 Policy. Accordingly, there is no actual controversy between the parties for purposes of Count II of ACE's Complaint." Mot. at 13 n.9. But this is not the position that US Magnesium has taken in the Pennsylvania Action. US Magnesium told the Philadelphia court that "USM **does not waive any rights of recovery it may have under the 2021-2022 policy**." Ex. 2, ¶ 37 (emphasis added). Stated plainly, US Magnesium is taking one position to avoid jurisdiction in this Court, while taking the opposite position to preserve all of its options of recovery in the Pennsylvania Action.

Because none of US Magnesium's arguments apply to Count II of ACE's Complaint, and because US Magnesium can avoid this point only by making self-contradictory arguments, this Court should, at the very least, retain jurisdiction over Count II.

### B. This Court Has Jurisdiction Over ACE's Claims For Declaratory Judgment[1]

Turning to US Magnesium's arguments, it is wrong to contend that this Court lacks the authority to hear this action. ACE's claims are brought solely under the Declaratory Judgment Act, which authorizes this Court to "declare the rights and other legal relations of [an] interested party seeking [declaratory relief]." 28 U.S.C. § 2201(a). ACE asserts no claims for injunctive relief, yet US Magnesium leapfrogs the Declaratory Judgment Act to argue that out-of-circuit caselaw concerning the Anti-Injunction Act, 28 U.S.C. § 2283, bars ACE's case. US Magnesium admits

---

[1] Although US Magnesium brings its motion under Rule 12(b)(1), the Anti-Injunction Act does not raise Rule 12(b)(1) jurisdictional defects. *See Monavie, LLC v. Quixtar Inc.*, 741 F. Supp. 2d 1227, 1232 n.2 (D. Utah 2009) (noting that "it appears to be the law in this Circuit that the Anti-Injunction Act is not a jurisdictional statute; it merely limits the district courts' general equity powers in respect to the granting of a particular form of equitable relief.") (quoting *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995)) (internal quotations and alterations omitted

that the Tenth Circuit has not adopted this rule where, as here, the plaintiff is not seeking an injunction. *See* Mot. at 8; *see also Chandler v. O'Bryan*, 445 F.2d 1045, 1050-51 (10th Cir. 1971) (reversing district court's grant of an anti-suit injunction). But even if the Tenth Circuit recognized the rule US Magnesium cites,[2] it does not apply here on its own terms.

According to US Magnesium's rule, a district court has "no authority to consider a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [the Anti–Injunction Act]." *Ins. Co. of the State of Pa. v. Sabre, Inc.*, 918 F. Supp. 2d 596, 597 (N.D. Tex. 2013) (alterations in original) (internal quotations omitted). This rule does not apply here on its own terms because the Pennsylvania Action and this action do *not* involve identical issues. As discussed above, the Pennsylvania Action does not involve the 2021-2022 Policy, which is at issue only in this Court. That means that this Court—and only this Court—will be presented with questions such as: how to apply the deductibles in the 2021-2022 Policy; how to apply exclusions in the 2021-2022 Policy; and whether US Magnesium complied with the conditions of the 2021-2022 Policy. *See* Compl. ¶ 70.

In short, this action and the Pennsylvania Action do not present "the same issues." *Sabre, Inc.*, 918 F. Supp. 2d at 597, and "[t]he want of any one factor defeats mandatory abstention," *AIX Specialty Ins. Co. v. Western States Asset Mgmt., Inc.*, No. 3:12-cv-4342, 2013 WL 4603775, at *2

---

[2] If the Anti-Injunction Act truly were the jurisdictional bar US Magnesium claims, it would mean that the Supreme Court and Tenth Circuit got it wrong when they enunciated multiple discretionary factors for courts to consider in declaratory judgment cases. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). According to US Magnesium, the governing multifactor test would collapse to a single, dispositive factor—whether the Anti-Injunction Act applies.

(N.D. Tex. Aug. 29, 2013) (unpublished). US Magnesium therefore has not established that the Anti-Injunction Act bars this Court from hearing this case, even assuming the Tenth Circuit adopted the rule US Magnesium proposes.

### C.    There Is No Basis For This Court To Decline To Exercise Jurisdiction

US Magnesium also argues that the Court should abstain from hearing this case so that the parties can litigate it in Philadelphia, more than 2,000 miles away from the Facility. There is no basis for the Court to accept this invitation.

"Generally, federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1191 (D.N.M. 2012) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). In the context of declaratory judgment actions, however, courts can exercise their discretion and decline to hear them. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Courts in this Circuit consider five factors (often called the *Mhoon* factors) to determine whether to retain jurisdiction over a declaratory judgment dispute:

> (1) whether the declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1275 n.4 (10th Cir. 1989) (internal quotation marks omitted). "[N]o single *Mhoon* factor is dispositive; each is given equal weight." *Farm Bureau Prop. & Cas. Ins. Co. v. Sparks*, No. 12-cv-44, 2021 WL 321951, at *7 (D. Utah Jan. 29, 2021). And a district court is given considerable latitude in weighing "the various fact-intensive and highly discretionary factors involved." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

All five factors counsel in favor of retaining jurisdiction, as shown by the analogous case of *DP-Tek, Inc. v. Villalobos*, 809 F. Supp. 811 (D. Kan. 1992). The defendant in *DP-Tek* filed an action in California state court asserting claims for rescission, wrongful termination, and fraud arising out of disputes concerning employment agreements. *See id.* at 812. Meanwhile, the plaintiff filed a declaratory judgment action in the District of Kansas that "subsume[d] the parties and issues" that would be decided in the California action, and added claims based on the defendant's conduct during his employment.[3] *Id.* The defendant moved to dismiss the Kansas action in favor of the California action (which by then had been removed to federal court). *See id.* The District of Kansas, applying the same factors articulated in *Mhoon*, denied the motion for reasons that are practically on all fours with the instant dispute:

> While it appears that a declaratory judgment may not be the best way to resolve this case, the court finds that a number of factors support maintaining jurisdiction over this declaratory judgment action. Elements of forum non conveniens appear to be present in the California action. [The plaintiff in the Kansas action] is a Wichita company, and many (if not all) of its records and witnesses are located here. The contracts at issue were executed in Kansas. Kansas law applies to the claims raised in both this action and the California action. The court believes it could be an unnecessary burden on the California court to decide Kansas law issues. All of the parties' claims arose out of the same factual background and could be resolved in one action in this court. [The defendant] could raise his claims from the California action by way of counterclaim in this action.

*Id.* at 813. The court also relied on the fact that the "California action does not appear to be better or more effective in settling the entire controversy, since [the plaintiff's] Count II claims are not included in that action." *Id.*

The reasoning of *DP-Tek* applies almost word-for-word to this case. Like the defendant in *DP-Tek*, US Magnesium filed suit in a jurisdiction that is obviously inconvenient for the litigation

---

[3] Although the plaintiff filed the Kansas action first, it did not serve the complaint until after the California action had been filed. *See DP-Tek*, 809 F. Supp. at 812.

of this Utah-based dispute. Like *DP-Tek*, the underlying events occurred in the state where the federal action was filed, and nothing relevant to this dispute occurred in Pennsylvania, where the state action was filed. Like *DP-Tek*, the law of this forum will apply to this dispute. And like in *DP-Tek*, the federal case—not the state case—will decide the full dispute between the parties. For all of these reasons, this Court, just as the court did in *DP-Tek*, should retain jurisdiction over this action, which was plainly filed in the correct forum.

None of US Magnesium's counterarguments can overcome these dispositive factors.

1.    This Action Will Settle The Controversy Between The Parties And Clarify Their Relations As To Both The 2020-2021 Policy And The 2021-2022 Policy

First, and despite US Magnesium's arguments to the contrary, "little doubt exists that declaratory relief" in this action "would 'settle the controversy' between Plaintiff and Defendant[]." *Farm Bureau Prop. & Cas. Ins. Co. v. Gomez*, No. 21-cv-527, 2021 WL 4521061, at *4 (D.N.M. Oct. 4, 2021) (unpublished) (quoting *Mhoon*, 31 F.3d at 983). This action will decide issues under the 2020-2021 Policy *and* the 2021-2022 Policy. The Pennsylvania Action will decide only part of the dispute.

US Magnesium relies heavily on *St. Paul Fire & Marine Insurance Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995), but that case does not counsel against retaining jurisdiction; it simply highlights US Magnesium's sharp practice. In *Runyon*, an insurer filed a preemptive declaratory judgment action in the Western District of Oklahoma after its policyholder announced he would file a breach of contract suit in Oklahoma state court. *See id.* at 1168; *see also id.* at 1169 (noting that insurer argued that, because of an Oklahoma statute, it "cannot receive relief through the state court contract proceeding"). The Tenth Circuit affirmed the district court's dismissal, concluding that, "[b]ecause the state court will determine, under state contract law, whether the [underlying

claim] is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract." *Id.* at 1169.

But US Magnesium has not sued in *Utah* state court, it has sued in *Pennsylvania* state court, even though (as discussed below at 17-19) that state's law will not apply and the state has no relevant contacts with this dispute. *Contra Prime Ins. Co. v. GKD Mgmt. LP*, No. 2:20-cv-252, 2020 WL 7698789 (D. Utah Dec. 28, 2020) (unpublished) (cited by Mot. at 13) (declining jurisdiction over coverage action arising out of Georgia accident that was being litigated in Georgia court). The Pennsylvania court also will not resolve the parties' dispute concerning the 2021-2022 Policy, as US Magnesium has not sued on that Policy (while reserving its right to sue on it later). *Contra Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 (10th Cir. 2012) (cited by Mot. at 16) (affirming dismissal where identical issues would be resolved in state court action); *Freedom Holding Corp. v. Estate of Tolmakov*, No. 2:20-cv-67, 2021 WL 1753569, at *2 (D. Utah May 4, 2021) (unpublished) (cited by Mot. at 15-16) (declining jurisdiction where the state action "involves the same claims … with identical questions of law").

US Magnesium also argues that "ACE does not seek proper declaratory relief because ACE seeks a declaration of nonliability for its past breach." Mot. at 15. But this Court has disagreed, stating that "'declaratory judgment actions to determine the scope of insurance coverage are precisely the type of actions for which declaratory judgement is intended to solve.'" *Farm Bureau Prop. & Cas. Ins. Co. v. Sparks*, No. 1:20-cv-44, 2021 WL 321951, at *5 (D. Utah Jan. 29, 2021) (Parrish, J.) (quoting *Cont'l Cas. Co. v. Bowen*, No. 2:09-cv-810, 2010 WL 3743909, at *2 (D. Utah Sept. 22, 2010) (unpublished)). What's more, this declaratory action is intended in part to "'avoid future litigation.'" *Gonzalez v. Wells Fargo Bank, N.A.*, No. 2:12-cv-286-DN, 2013 WL 2456397, at *1 (D. Utah June 6, 2013) (unpublished) (cited by Mot. at 15). US Magnesium has

refused to "waive any rights of recovery it may have under the 2021-2022 policy," meaning that it could decide at any time to bring suit under that Policy. Ex. 2, ¶ 37. ACE is entitled to have this issue decided now.

US Magnesium also asks this Court to dive down a rabbit hole by considering "whether Starr is a necessary and indispensable party to this action." Mot. at 14. Starr is not a party to the insurance contracts, and US Magnesium has no conceivable claim against it—which likely explains why it did not name Starr as a defendant in the Pennsylvania Action. Certainly, Starr personnel outside of Pennsylvania underwrote and executed the Policies (which were then sent to Utah) and handled the claims (which occurred in Utah). These facts confirm why Utah is the appropriate jurisdiction for this action; they do not give rise to any cause of action that would allow Starr to be joined as a party.

The first two *Mhoon* factors therefore weigh in favor of retaining jurisdiction in this Court.

### 2.    This Action Is Protecting *Against* US Magnesium's Forum-Shopping

Next, US Magnesium remarkably argues that *ACE* is forum-shopping by filing this suit in the same district where the claimed damages took place, where the insurance policies were delivered, and where US Magnesium is headquartered. The reality is the opposite—US Magnesium engaged in gamesmanship by filling a peremptory suit in Philadelphia, thousands of miles away from any witness or document relevant to this case. This action is intended to protect against forum-shopping, and this factor therefore supports retaining jurisdiction. *See DP-Tek*, 809 F. Supp. at 813.

US Magnesium disagrees, but every Tenth Circuit case US Magnesium cites involved a plaintiff suing in the state where the dispute arose—not a plaintiff that had forum-shopped its way into a jurisdiction it viewed as more favorable:

- *Runyon*: An Oklahoma dispute pending in Oklahoma state court, with a parallel action filed in Oklahoma federal court. *See Runyon*, 53 F.3d at 1169.

- *Freedom Holding*: A Utah dispute pending in Utah state court, with a parallel action filed in Utah federal court. *See Freedom Holding Corp. v. Estate of Tolmakov*, No. 2:20-cv-67, 2021 WL 1753569, at *1 (D. Utah May 4, 2021) (unpublished).

- *Mutual of Omaha*: A Kansas dispute that had been pending in Kansas state court for 2 years, with a parallel action filed in Kansas federal court. *See Mut. of Omaha Ins. Co. v. Rodriguez*, No. 09-2100, 2009 WL 3672513, at *1, *4 (D. Kan. Nov. 2, 2009) (unpublished).[4]

US Magnesium reaches for a Sixth Circuit case where the court did address suits pending in different states, *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), but that decision confirms how improperly US Magnesium has acted here. In *AmSouth*, Tennessee banks sued the insurance commissioners of Mississippi and other states to recover money from insurance companies that the Mississippi commissioner had placed into receivership. *See id.* at 770. While settlement talks were ongoing, the banks filed a preemptive suit in Tennessee federal court and then obtained an anti-suit injunction to prevent the receivers from litigating the same issues in Mississippi state court. *See id.* at 771-72. The Sixth Circuit concluded that the banks had engaged in inappropriate forum-shopping because "the practical effect of [the banks'] participation in settlement negotiations and affirmative representations of that participation was to lull the Receivers into believing that amicable negotiation was still possible" before preemptively filing suit. *Id.* at 790.

---

[4] In *Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-cv-560, 2014 WL 811993 (D. Colo. Mar. 3, 2014) (unpublished), the court rejected the defendant's abstention argument. The decision in *Sharkey v. Spatafore*, No. 2:23-cv-561, 2023 WL 5938186 (D. Utah Sept. 12, 2023), addressed only whether a non-party was necessary and indispensable.

The court also held that Mississippi was an appropriate forum for the dispute because "two-thirds of the total loss suffered was by Mississippi insurance companies," the "scheme" leading up to the receivership proceedings "was nationwide," and any witnesses and documents that might be in Tennessee were "adjacent" to Mississippi. *Id.* at 791.

All of these critiques apply to US Magnesium, not ACE. In early 2025, ACE believed that the parties were engaged in talks to potentially facilitate a resolution of the claim. *See* Compl. ¶ 48. ACE did not know that US Magnesium was in fact planning a peremptory suit in Philadelphia. *See id.* ¶¶ 49-50. Unlike in *AmSouth*, Pennsylvania is not adjacent—or even in the same time zone— to any state with relevant witnesses or documents. And also unlike the plaintiff in *AmSouth*, ACE is not seeking an anti-suit injunction against US Magnesium. *AmSouth* thus supports denying US Magnesium's Motion, not granting it.[5]

3.    This Action Will Cause No Friction With The State Court System Because Pennsylvania Has No Interest In This Dispute

The next *Mhoon* factor asks whether the action will cause friction with the state court system. That plainly will not happen here, as the court in Philadelphia has no genuine connection to this dispute, and thus no "interest" that this Court can conflict with. US Magnesium, however, relies on *Mid-Continent Casualty Co.*, 685 F.3d 977, where the Tenth Circuit held that the district court had not abused its discretion in concluding that a Missouri state court would be "better situated" to decide the interpretation of an insurance contract. *Id.* at 986. The district court had

---

[5] US Magnesium again argues (Mot. at 17-18) that ACE has somehow "inject[ed] a new party into this insurance dispute." But as previously discussed (at 15), Starr is not a party to the insurance contracts and US Magnesium has no cause of action against it.

US Magnesium also makes the unfounded accusation that ACE's Utah counsel is conflicted. *See* Mot. at 18. Those allegations are false, and if US Magnesium decides to move to disqualify Utah counsel (which it conspicuously has not done), the undersigned looks forward to giving the Court the full evidentiary record showing why his firm stopped representing US Magnesium well before ACE reached out about this dispute.

17

reasoned that this was true "regardless of whether Kansas or Missouri law controls," but also held that "[i]f Missouri law does indeed control … the Missouri state courts are uniquely suited to resolve the dispute." *Id.* These factors are not present here because Pennsylvania law plainly does not apply to this dispute.

To decide which law applies in a contract action, "Utah courts look to the state that has the 'most significant relationship to the transaction and the parties,'" using the factors from Section 188 of the Restatement (Second) of Conflict of Laws. *Gladys Stirn, Inc. v. Mut. of Enumclaw Ins. Co.*, No. 2:20-cv-838, 2021 WL 12313769, at *2 (D. Utah June 4, 2021) (unpublished) (quoting *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996)). Under this analysis, Utah law will apply because the Policies were negotiated in part in Utah, they principally cover property in Utah, including the Facility in Rowley where the claimed losses occurred, and US Magnesium is headquartered in Utah. *See id.* (applying Arizona law in part because insured was an Arizona company that bought insurance to cover Arizona property); *see also* Ex. 5 at 11.

US Magnesium suggests that the court in the Pennsylvania Action could find that a different state's law applies (Mot. at 18-19), but the very case it cites disproves this assertion. The court in *Oneida Plaza, LLC v. Ohio Sec. Ins. Co.*, No. 20-cv-4485, 2022 WL 254571 (E.D. Pa. Jan. 27, 2022) (unpublished), applied Section 193 of the Restatement (Second) of Conflict of Laws to determine the law to apply to a property insurance dispute. *See id.* at *5. That section counsels that "[a] court should generally give the location of the insured risk 'greater weight than any other single contact.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 193, cmt. b). Because *Oneida* concerned "a commercial property insurance policy that provides coverage for the Property, which is located at 1651 Oneida Street, Utica, New York," the court concluded that "under § 193, New York has the most significant relationship to the insurance contract." *Id.* This

analysis unquestionably points to Utah in this case. And if the Pennsylvania court applies the "most significant relationship" test of Section 188, that will also point to Utah, as it is the same rule Utah courts apply. *See id.*; *see also Gladys Stirn*, 2021 WL 12313769, at *2 (considering § 188 factors).

For these reasons, there is no chance any law other than Utah's would apply to this dispute. It would therefore impose an "unnecessary burden" on a court in Philadelphia to decide issues under Utah law and apply them to Utah facts. *DP-Tek*, 809 F. Supp. at 813. It is impossible for this Court to interfere with the interests of the Pennsylvania court system in this case.

4.     There Is No Better Alternative Remedy To This Action

The final *Mhoon* factor asks "'whether the state court is 'simply better situated to provide complete relief to all parties involved in the … dispute.''" Mot. at 20 (quoting *Freedom Holding Corp.*, 2021 WL 1753569, at *3. This factor indisputably favors retaining jurisdiction because the Pennsylvania Action will not and cannot "provide complete relief" between the parties because the 2021-2022 Policy is not at issue there. As such, "the same issues" are not present in the Pennsylvania Action, *Brillhart*, 316 U.S. at 495, and only this action can "provide complete relief" as only this Court has all of the factual and legal issues before it.

**D.    In The Alternative, This Court Should Stay This Action Pending The Pennsylvania Court's Ruling On ACE's *Forum Non Conveniens* Motion**

Should this Court decline to hear ACE's claims immediately (and for the reasons explained above, it should not), ACE agrees with US Magnesium that the Court should stay consideration of Count I of the Complaint, or alternatively, the case as a whole. "When a federal court declines to hear a declaratory action where there is a pending state court proceeding, a stay is often preferable to dismissal." *Farmers Ins. Co. of Arizona v. Komis*, No. 1:17-cv-703, 2017 WL 6372663, at *5 (D.N.M. Dec. 12, 2017) (unpublished) (citing *Wilton*, 515 U.S. at 288 n.2); *see also Aspen Specialty Ins. Co. v. Utah Loc. Governments Tr.*, 954 F. Supp. 2d 1311, 1316-318 (D. Utah 2013).

ACE has already moved to dismiss the Pennsylvania Action for *forum non conveniens*, *see* Ex. 3, and US Magnesium's response to that motion is due on July 14, 2025. Should the Pennsylvania Action be dismissed, all of US Magnesium's arguments will become moot, US Magnesium will simply answer the Complaint, and the parties can continue litigating the dispute. Staying this action pending the resolution of the *forum non conveniens* motion would allow the parties to litigate their full dispute immediately, saving time and money.

## IV.    CONCLUSION

For these reasons, the Court should deny US Magnesium's Motion to Dismiss or Stay. In the alternative, the Court should stay consideration of Count I, or in the alternative the action as a whole, pending the resolution of ACE's motion to dismiss for *forum non conveniens* in the Pennsylvania Action.

Respectfully submitted,


DATED:    July 7, 2025        */s/ Erik A. Christiansen*
                              Erik A. Christiansen
                              PARSONS BEHLE & LATIMER

                              Philip C. Silverberg (*pro hac vice*)
                              Guyon H. Knight (*pro hac vice*)
                              MOUND COTTON WOLLAN &
                              GREENGRASS LLP

                              *Attorneys for Plaintiff ACE American
                              Insurance Company*

4900-0197-6915.v2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 7th day of July, 2025, he caused to be served the foregoing **RESPONSE TO US MAGNESIUM'S MOTION TO DISMISS OR STAY** via electronic filing on this Court's CM/ECF service, which sent notice to all counsel of record.

/s/ *Erik A. Christiansen*

Erik A. Christiansen

4900-0197-6915.v2