Michael R. Johnson (7070)
Matthew M. Cannon (11265)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel:  (801) 532-1500
Fax:  (801) 532-7543
mjohnson@rqn.com
mcannon@rqn.com

Jason A. Snyderman (admitted *pro hac vice*)
John P. Wixted (*pro hac vice* forthcoming)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Tel:  (215) 569-5774
Fax:  (215) 832-5774
Jason.Snyderman@BlankRome.com
John.Wixted@BlankRome.com

John A. Gibbons (*pro hac vice* forthcoming)
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC 20006
Tel:  (202) 420-3644
Fax:  (202) 379-9118
John.Gibbons@BlankRome.com

Jason Frye (admitted *pro hac vice*)
**BLANK ROME LLP**
444 West Lake St., Suite 1650
Chicago, IL 60606
Tel:  (312) 776-2600
Fax:  (312) 275-8146
Jason.Frye@BlankRome.com

*Attorneys for Defendant US Magnesium, LLC*

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. MAGNESIUM, LLC,<br><br>Defendant. | **USM'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR STAY BASED ON THE ANTI-INJUNCTION ACT OR *WILTON/BRILLHART* ABSTENTION**<br><br>Case No. 2:25-cv-00371-JNP<br><br>Hon. Judge Jill N. Parrish |

Defendant US Magnesium, LLC ("USM"), by its attorneys, respectfully submits its reply in further support of its motion to dismiss or stay this declaratory judgment action brought by ACE American Insurance Company ("ACE").[1]

## I.   INTRODUCTION

ACE's opposition to USM's Motion ("Opp'n") is heavy on feigned outrage and light on supporting legal authority. ACE likely knew that its procedural scheme would fail if it only included the 2020-2021 Policy (the "All Risk Policy") in its Complaint. Thus, ACE invented a controversy over the subsequent 2021-2022 Policy so as to claim that the parties can only obtain complete relief in this action. But ACE exposed its own ruse when it admitted in the Pennsylvania Action that USM "has chosen not to assert claims under the 2021-2022 Policy." *See* USM Mem. at Ex. A, New Matter ¶36. It is black letter law that ACE cannot obtain a declaration that it has not breached the 2021-2022 Policy unless or until USM asserts an actual claim under that policy. ACE's attempt to equate USM's unwillingness to "waive its rights" with a claim is sophistry.

Aside from the manufactured controversy over the 2021-2022 Policy, the bulk of ACE's opposition is a regurgitation of its motion to dismiss based on *forum non conveniens* filed in the Pennsylvania Action. The Pennsylvania court, however, recognized ACE's procedural scheme and denied ACE's *forum non conveniens* motion. A true and correct copy of the court's order is attached hereto as **Exhibit D**. The Pennsylvania court made it clear that it was ready and willing to resolve the parties' dispute. And as the U.S. Supreme Court proclaimed more than 80 years ago, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in USM's Motion to Dismiss or Stay (the "Motion"). Dkt. 9.

governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The fact that USM's state court action is pending in ACE's home forum, rather than Utah, does not alter this directive.

ACE also tries to distance itself from its home forum by claiming that it was Starr that underwrote the All Risk Policy and "was responsible for all negotiations, underwriting, claims handling, payment processing, and the overall relationship with the insured." Opp'n at 3. ACE includes an entire section of background in its opposition describing how Starr—rather than ACE—investigated USM's insurance claim and "arranged for payment." *Id.* at 4-5. Yet, in the same breath, ACE claims that Starr is not a necessary and indispensable party to this action. ACE never disputes (and actually acknowledges) that Starr was at all times acting as ACE's own "Managing Agent" and that ACE is ultimately responsible for any liability.[2] In another example of its continued gamesmanship, ACE refused to answer *any* discovery in the Pennsylvania Action regarding ACE's relationship with Starr or why ACE believes there is an actual controversy regarding the 2021-2022 Policy. ACE, notably, does not dispute the fact that Starr cannot be joined here without destroying diversity jurisdiction.

ACE concocted a multi-step scheme to deprive USM of its chosen forum. ACE chose to answer USM's complaint in the Pennsylvania Action and subsequently file this competing action so it could argue to the Pennsylvania court that the Utah federal court was an alternative forum. The Pennsylvania court recognized ACE's scheme and denied ACE's *forum non conveniens* motion. This Court should likewise reject ACE's procedural skullduggery and dismiss or stay this action.

---

[2] Indeed, not only did ACE file an Answer to USM's Philadelphia Complaint, but it did *not* seek to be dismissed as a defendant and instead limited its motion to dismiss solely to its assertion that Philadelphia is an inconvenient forum.

2

## II.  ARGUMENT

### A.  Count II of ACE's Complaint Does Not Preclude Dismissal

ACE contends, without support, that "the Court can retain jurisdiction over Count II and need not decide at this time whether it should also hear Count I." Opp at 8-9. But ACE cannot invent a controversy where one does not presently exist in order to manufacture jurisdiction. It is axiomatic that a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted).

In Count II, ACE seeks a "declaration that it has not breached the 2021-2022 Policy." Compl. ¶71. But ACE admits that USM "has chosen not to assert claims under the 2021-2022 Policy." USM Mem., Ex. A, New Matter ¶36. Absent such a claim, Count II does not present a case or controversy for purposes of the Declaratory Judgment Act. *See Am. Int'l Specialty Lines Ins. Co. v. Pacifica Amber Trail, LP*, No. 11CV0336-LAB-WVG, 2013 WL 3205345, at *2 (S.D. Cal. June 24, 2013) (unpublished) (noting that the insurer "points to no insurance case where a court concluded that there was a controversy when the insured party was not, at the time, seeking any contribution or coverage from the insurer"); *see also Baser v. State Farm Mut. Auto. Ins. Co.*, 560 Fed. Appx. 802, 803 (10th Cir. 2014) (unpublished) (no controversy where action against insurer was based on hypothetical facts); *Associated Indus. Ins. Co., Inc. v. Stahl Cowen Crowley Addis LLC,* No. 15 C 4296, 2016 WL 3088142, at *2 (N.D. Ill. June 2, 2016) (unpublished) ("As things currently stand, however, SCCA is not asking AIIC to defend or indemnify it for the LNI litigation, and thus there is no controversy."). USM's refusal to waive its rights under the 2021-2022 Policy does not suffice as a "claim" because USM does not currently seek coverage (and may never seek coverage) under that policy. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Ormston*, 550 F. Supp. 103, 106 (E.D. Pa. 1982) (no case or controversy where insured withdrew claim

3

without prejudice to the right to assert a claim at a later time).

### B. It is Irrelevant that ACE Does Not Seek Injunctive Relief

ACE next contends that the Anti-Injunction Act, 28 U.S.C. § 2283, does not apply because "ACE asserts no claims for injunctive relief." Opp'n at 9. But courts apply the Anti-Injunction Act to *declaratory judgment actions* such as this one where the issuance of a declaratory judgment would have the same effect as an injunction. *See, e.g., Ins. Co. of Pa. v. Sabre, Inc.*, 918 F. Supp. 2d 596, 601 (N.D. Tex. 2013) ("Because § 2283 would bar this court from enjoining the New York Action, the court is also barred from considering the request for declaratory relief in the Federal Action"). Aside from this straw man, ACE does not seriously contest the applicability of the Act. Instead, ACE clutches to Count II to argue that the two actions do not address the "same issues." Opp'n at 10. That is too slender of a reed to avoid application of the Anti-Injunction Act when Count II does not constitute an actual controversy.

ACE also displays its fundamental misunderstanding of the law when it argues that the Anti-Injunction Act is not a "jurisdictional bar." Opp'n at 10 n.2. The Anti-Injunction Act applies in this context because USM filed a state suit first. *See Sabre, Inc.*, 918 F. Supp. 2d at 598-99 (noting that a "district court has no authority to consider a declaratory judgment action when: '(1) the declaratory defendant *previously filed a cause of action in state court* ….'") (emphasis added). A court also may abstain under *Wilton/Brillhart* even if the Anti-Injunction Act does not apply.

### C. The *Mhoon* Factors Favor Abstention Under *Wilton/Brillhart*

#### 1. ACE Relies on Inapposite Authority

ACE relies exclusively on one case to support its position, *DP-Tek, Inc. v. Villalobos*, 809 F. Supp. 811 (D. Kan. 1992), and claims that this non-precedential district court order compels this Court to exercise jurisdiction. Opp'n at 12. But *DP-Tek, Inc.* was not an insurance case, and the court applied the incorrect abstention doctrine. There, the plaintiff sought damages, injunctive

4

relief, and a declaratory judgment. *DP-Tek, Inc.*, 809 F. Supp. at 812. While the court considered the five *Mhoon* factors for *Wilton/Brillhart* abstention, *id.* at 813, it should have applied the more stringent *Colorado River* abstentions analysis. Courts in the Tenth Circuit apply *Colorado River* when a party also seeks damages or other coercive relief. *See, e.g., United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) ("If the plaintiff only requests a declaration of its rights, *not coercive relief*, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit.") (emphasis added); *CNSP, Inc. v. City of Santa Fe,* 753 Fed. Appx. 584, 587 (10th Cir. 2018) (unpublished) (rejecting argument that *Wilton* abstention applied instead of the more stringent "*Colorado River*'s exceptional-circumstances test" because "the *Wilton* standard applies to declaratory judgment actions … while in this case the parties seek injunctive relief"); *see also U4, LLC v. Sonic Drive-In of Pittsburg, LLC*, No. 16-1269-EFM-GEB, 2017 WL 3232845, at *3 (D. Kan. July 31, 2017) (unpublished) ("Because U4 seeks damages in addition to a declaratory judgment, *Brillhart* does not apply here. Rather, the Court will apply *Colorado River* in considering Sonic's motion for stay."). This case does not bolster ACE's position.

In contrast, the Tenth Circuit's decision in *St. Paul Fire & Marine Insurance Company v. Runyon*, 53 F.3d 1167 (10th Cir. 1995), is on all fours. ACE implies that the crux of *Runyon* was that the state court case was pending in the same state as the federal court proceeding. Opp'n at 14. But there is no indication that this played any role in the *Runyon* court's decision. Indeed, the court does not even reference which state the proceedings were pending in, other than to respond to the insurer's argument regarding an Oklahoma statute. *Id.* at 1169. The *Runyon* court affirmed the trial court's refusal to exercise jurisdiction because the "parties have a pending state contract action, which incorporates the identical issue involved in the declaratory judgment action." *Id.*

5

Here, just as in *Runyon*, ACE's requested relief "is identical to what would be a defense to [USM's] state court contract action." *Id.* ACE provides no reason for this Court to depart from the Tenth Circuit's sound reasoning in *Runyon*.

### 2.   **ACE Does Not Seek Proper Declaratory Relief in this Action**

ACE argues that the first two *Mhoon* factors weigh in favor of retaining jurisdiction because this "action will decide issues under the [All Risk] Policy and the 2021-2022 Policy," but the "Pennsylvania Action will decide only part of the dispute." Opp'n at 13. As noted above, however, there is no ripe controversy between the parties regarding the 2021-2022 Policy. ACE also gives short shrift to USM's argument that ACE cannot obtain a declaration of nonliability for its past breach of the All Risk Policy. Opp'n at 14. The most ACE can muster is to note the unremarkable proposition that "declaratory judgment actions to determine the scope of insurance coverage are precisely the type of actions for which declaratory judgment is intended to solve." *Id.*[3] ACE fails to cite *any authority* that permits an insurance company to obtain a declaratory judgment *after* it has breached its obligations and after its insured sustained damages.

### 3.   **Starr's Joinder Will Destroy Diversity Jurisdiction**

ACE also feigns surprise that USM raised the issue of whether Starr is a necessary and indispensable party. Opp'n at 15. USM understood that ACE was the real party in interest because the All Risk Policy is written on ACE paper and contains an endorsement stating that the signatures of ACE's officers are the only signatures applicable to the All Risk Policy. *See* Dkt 1-1 at p. 102.

---

[3] ACE cites this Court's opinion in *Farm Bureau Prop. & Cas. Ins. Co. v. Sparks*, No. 1:20-cv-44, 2021 WL 321951, at *5 (D. Utah Jan. 29, 2021) (Parrish, J.), to support this general proposition of law. In that case, however, the insurer was providing its insured with a defense and **had not yet breached its obligations** under the policy at issue. *See id.* at *1 ("Farm Bureau is providing a defense to Sparks and Perkins in the Underlying Lawsuit, subject to its full reservation of rights and the resolution of this declaratory action."); *see also Cont'l Cas. Co. v. Bowen*, No. 2:09-cv-810, 2010 WL 3743909, at *2 (D. Utah Sept. 22, 2010) (unpublished) (same).

ACE now claims that "Starr was responsible for all negotiations, underwriting, claims handling, payment processing, and the overall relationship with the insured." Opp'n at 3. Thus, by ACE's own admissions, Starr appears to be a necessary and indispensable party to this dispute, and ACE's refusal to provide *any discovery* in the Pennsylvania Action regarding the nature of their relationship is telling.[4] Starr is aligned with ACE, and ACE notably does not dispute that this Court lacks diversity jurisdiction over Starr if it is joined in this action.

### 4.  ACE Filed in this Forum to Obtain a Perceived Advantage

ACE also brazenly argues that it is *USM* that is engaged in forum shopping. Opp'n at 15. ACE obfuscates the fact that USM sued ACE first—in ACE's home forum—to obtain damages for a breach that already occurred. *E.g., IBC Mfg. Co. v. Berkshire Hathaway Specialty Ins. Co.*, No. 3:16-CV-00908-SI, 2016 WL 4522665, at *5 (D. Or. Aug. 29, 2016) (unpublished) (agreeing that party did not engage in forum shopping where claim was not an anticipatory declaratory action and "plaintiff filed suit in the defendant's home forum"). In contrast, ACE filed this duplicative, declaratory judgment action a month later in order to obtain some perceived advantage and to avoid a court and jury in its backyard. *See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) ("It seems clear that the Banks filed declaratory actions not to resolve issues of liability that were hindering their normal behavior, but instead to gain procedural advantage."). ACE's newfound claim that it "believed that the parties were engaged in talks to potentially facilitate a resolution of the claim" is not supported by ACE's allegations in this action. *Compare* Opp'n at 17 *with* Compl. ¶¶48-50.

Perhaps realizing that its forum shopping is self-evident, ACE again attempts to shoehorn

---

[4] A true and correct copy of ACE's Objections and Responses to Plaintiff's First Set of Interrogatories is attached hereto as **Exhibit E**.

7

a *forum non conveniens* element into this *Mhoon* factor. ACE claims that "every Tenth Circuit case US Magnesium cites involved a plaintiff suing in the state where the dispute arose." Opp'n at 15. Even a cursory reading of those cases shows that the location of the state action was not material to the courts' analysis. *See Runyon*, 53 F.3d at 1169 (no discussion that location of state case was material); *Freedom Holding Corp. v. Estate of Tolmakov*, No. 2:20-cv-67, 2021 WL 1753569, at *1 (D. Utah May 4, 2021) (unpublished) (same); *Mut. of Omaha Ins. Co. v. Rodriguez*, No. 09-2100, 2009 WL 3672513, at *1, *4 (D. Kan. Nov. 2, 2009) (unpublished) (same). Moreover, "whether the forum chosen by the declaratory plaintiff is 'logical' can have only a minimal value in determining whether procedural fencing has occurred." *AmSouth Bank*, 386 F.3d at 789. "The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first. That a particular forum is better or worse is irrelevant in answering that factual question." *Id.*

ACE also misleads this Court when it claims that the court in *AmSouth Bank* "held that Mississippi was an appropriate forum." Opp'n at 16-17. The court made no such holding. ACE cites to the *Receivers*' *argument* that the Mississippi litigation presented a better remedy and passes it off as the *court's* own holding. *See AmSouth Bank*, 386 F.3d at 791 ("The Receivers reply that Tennessee and Mississippi are adjacent, reducing the burden of travel, that two-thirds of the total loss suffered was by Mississippi insurance companies, and that the scheme was nationwide, with documents in numerous fora."). Indeed, AmSouth Bank argued—just like ACE does here regarding Utah—that "the material witnesses reside in Tennessee, the underlying events occurred in that state, relevant documents are located in Tennessee, and Tennessee law will likely govern." *Id.* Yet, the court still held that "no factors weigh[] in favor of proceeding with the declaratory-judgment action" that AmSouth Bank filed in Tennessee. *Id.*

8

### 5. Pennsylvania—ACE's Home Forum—Certainly Has an Interest in this Dispute

ACE next misconstrues the fourth *Mhoon* factor when it claims there is no friction because the court in Philadelphia "has no genuine connection to this dispute" and "Pennsylvania law plainly does not apply to this dispute." Opp'n at 17-18. ACE ignores the friction that will result if this Court enters a declaration regarding questions that do not concern federal law and were first presented in the Pennsylvania Action. That is precisely the friction that is sought to be avoided under the fourth *Mhoon* factor. *E.g., Liberty Mut. Ins. Co. v. Thomas*, No. CIV-21-1093-SLP, 2024 WL 4094293, at *3 (W.D. Okla. Sept. 5, 2024) (unpublished) (finding insurer's federal declaratory judgment action improperly encroached upon state jurisdiction where "coverage dispute involves a question of state law and was first presented to the state court").

ACE glosses over the fact that Philadelphia is ACE's home forum and that ACE makes coverage decisions out of its Philadelphia headquarters. *See* Opp'n at Ex. 5 ¶2 (stating that coverage decisions "are reserved to the insurers"). ACE also directs its agents out of its Philadelphia office, as evidenced by the submission of three declarations of ACE agents in support its *forum non conveniens* motion. Opp'n at Exs. 3-6. A trial in Philadelphia will determine whether ACE—an insurance company with a principal place of business and headquarters located in Philadelphia—breached its obligations to its insured. This certainly implicates Pennsylvania's interest.

ACE also does not set forth any conflict between Utah and Pennsylvania law that would require a conflict of law analysis. A court need not determine choice of law absent a real conflict. *See, e.g., Applied Predictive Techs., Inc. v. Marketdial, Inc.*, 598 F. Supp. 3d 1264, 1273 (D. Utah 2022) (Parrish, J) ("Under Utah law, 'a choice of law analysis is preceded by a determination of whether there is a true conflict between the laws of those states that are interested in the dispute.'")

9

(citation omitted); *Oneida Plaza, LLC v. Ohio Sec. Ins. Co.*, No. CV 20-4485, 2022 WL 254571, at *4 (E.D. Pa. Jan. 27, 2022) ("If there is no conflict and the law in both jurisdictions is the same, then there is no need to proceed with a choice of law analysis."). ACE simply concludes that Utah law applies and then implicitly contends that the court in Philadelphia is unqualified to apply another state's law. Even if Utah law applies, the court in Philadelphia is more than capable of applying another state's insurance law.

### 6. The Parties Can Obtain Complete Relief in Pennsylvania

To support the final *Mhoon* factor, ACE again relies on Count II of its Complaint regarding the 2021-2022 Policy. But USM has not sought coverage under the 2021-2022 Policy, and there is no controversy for this Court to decide. Moreover, ACE does not argue (nor could it) that the language in the All Risk Policy and the 2021-2022 Policy differs in any material way. ACE also ignores the fact that it reserved its right "to assert new matters based on the terms and conditions of the 2021-2022 Policy" in the Pennsylvania Action. *See* Ex. A, New Matter ¶36. As such, the Pennsylvania Action will fully resolve the parties' dispute. "Because the state court will determine, under state contract law, whether the [claim] is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract." *Runyon*, 53 F.3d at 1169.

### III.   CONCLUSION

For the foregoing reasons, USM requests that the Court grant its Motion in its entirety.

| | |
|---|---|
| Dated: July 21, 2025 | Respectfully submitted, |

/s/ Michael R. Johnson

Michael R. Johnson (7070)
Matthew M. Cannon (11265)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel: (801) 532-1500
Fax: (801) 532-7543
mjohnson@rqn.com
mcannon@rqn.com

Jason A. Snyderman (admitted *pro hac vice*)
John P. Wixted (*pro hac vice* forthcoming)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Tel: (215) 569-5774
Fax: (215) 832-5774
Jason.Snyderman@BlankRome.com
John.Wixted@BlankRome.com

John A. Gibbons (*pro hac vice* forthcoming)
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC 20006
Tel: (202) 420-3644
Fax: (202) 379-9118
John.Gibbons@BlankRome.com

Jason Frye (admitted *pro hac vice*)
**BLANK ROME LLP**
444 West Lake St., Suite 1650
Chicago, IL 60606
Tel: (312) 776-2600
Fax: (312) 275-8146
Jason.Frye@BlankRome.com

*Attorneys for Defendant US Magnesium, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, which sent notification of such filing to all electronic filing users in this case.

    /s/ Annette Sanchez
    Annette Sanchez